IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78964-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ALEC G. SLANEY, | |
| Appellant. | |

LEACH, J. — Alec Slaney appeals his judgment and sentence for indecent liberties. He challenges the trial court's decision to exclude certain evidence about one of the victim's appointments with her doctor. He also contends the court misstated the law to the jury in an oral instruction and in written materials provided to the jury at the beginning of his trial.

The excluded evidence was only minimally relevant and had the potential to confuse and mislead the jury. So, the trial court did not abuse its discretion by excluding it. Slaney could defend himself without the evidence, and its exclusion does not implicate his right of confrontation. So, the trial court did not violate his constitutional rights to present a defense or to confront witnesses.

The court did misstate the law about the burden of proof and the role of the jury. But it later provided, orally and in writing, correct statements of the law making any error harmless. And, because the incorrect document provided the jury does not implicate Slaney's right to a public trial or his right to be present at all critical

stages of the trial, he does not establish that the trial court violated either of these rights. Finally, because the only errors Slaney identifies are harmless, he cannot establish that cumulative error prejudiced him or that the trial court abused its discretion in denying his motion for a new trial. We affirm.

FACTS

In March 2017, M.P. reported to the police that, on the evening of January 13, 2017, Alec Slaney assaulted her while she was asleep in the eight bedroom house he shared with M.P.'s friend, Selena Neuberger. The State charged Slaney with indecent liberties.[1]

At trial, witnesses testified to the following facts. On January 13, 2017, M.P. attended a Reserve Officer Training Corp ball with Neuberger. After the ball, the two went to Neuberger's house and drank whiskey and Coke. M.P. also ate a marijuana edible. At one point, M.P. vomited, and by the end of the night she felt "very drunk, very sick." Because M.P. started to fall asleep and was clearly intoxicated, Neuberger led her to her bedroom and put her in bed. Neuberger left the room for about 30 minutes. M.P. testified that she passed out during this time. She "woke up to someone kissing the side of [her] neck, and then . . . their hands were in [her] vagina." At first, she did not know who was doing this.

Neuberger decided to leave the house and went to her bedroom to get her coat. She testified, that when she entered her room, she saw Slaney on top of M.P. She also testified that it initially appeared to her that they were engaged in consensual sex. She said she was angry because they were having sex in her

_____

[1] RCW 9A.44.100(1)(b).

2

room rather than in Slaney's room.  After Neuberger said "[w]hat the fuck," they stopped. Slaney stood up, grabbed his clothes, and left.  Neuberger said M.P. looked like she was "in shock" and "[h]er face was drained of emotion."  Neuberger then left the house in an Uber.

M.P. testified that she went back to bed and woke up to Slaney "touching up" on her again.  She told him she did not want to go to his room and he left.  She went to the bathroom and sent a Snapchat video of herself saying "'Running from my rapist.'"  One of her friends responded, asked if she was okay, and offered to pick her up.  While M.P. was waiting outside for her friend, Neuberger returned and saw her outside. Neuberger told M.P. she was angry about what happened. M.P.'s friend arrived, M.P. got into his car, and he drove her to her apartment.

After M.P. left, Neuberger sent her a text.  It resulted in the following conversation.

> [Neuberger]  I'm kinda pissed at you, you know?
>
> [M.P.] I was sleeping and he came in[.]  I don[']t know what happened[.]  I wasn[']t awake.
>
> [Neuberger]  So you just fucked him??  Jesus[.]  I mean come on[.]
>
> [M.P.] No?  Like I woke up[.]  And he was having sex[] with me.
>
> [Neuberger]  I walked in and he was plowing you.
>
> [M.P.]  Yeah [I] was shocked my[self.]  He came b[a]ck like 2 times and [I] told him to go away[.]
>
> [Neuberger]  The fuck[.]  So he raped you?
>
> [M.P.]  I don[']t wanna call it that[.]
>
> [Neuberger]  Then what?  Cuz that's what . . . it sounds like[.]  Or you [are] lying to me and you wanted it[.]  It's one of the two[.]

3

[M.P.]  I really didn[']t want it[.]  He came back and [I] shoved him off[.]  I wouldn[']t do that to you.

At opening and closing arguments, defense asserted that M.P. was not so intoxicated that she could not consent, that Neuberger's testimony and other circumstantial evidence undermined M.P.'s credibility concerning her consent testimony, and that M.P. decided to claim the incident was nonconsensual in response to Neuberger's apparent anger.

Evidentiary Rulings

Before trial, Slaney asked the court to compel the disclosure of medical records from two medical appointments after the alleged assault.  M.P. made the first appointment at Hall Health at the University of Washington (UW) a few weeks after the incident.  M.P.'s mother made the second appointment for her two months after the incident with Dr. Kristen Knox at Evergreen Health Signature Care (Evergreen).  The trial court reviewed the records in camera and denied the request because neither the UW records, nor the Evergreen records, contained references to the incident at issue or "any reference to sexual assault."  When Slaney asked the court to reconsider, it granted the request to compel the Evergreen records, ordering them produced to the defendant subject to a protective order. The court also allowed a pretrial interview with Knox, but it limited questioning to foundation with respect to M.P.'s medical record, Knox's general practice, and communication about the incident.  It prohibited parties from asking about M.P.'s sexual history.

After the Knox interview, the trial court ruled the evidence from the medical appointments inadmissible.

Trial Court Pre-Trial Statement and Bailiff's Note

Just before voir dire, the trial court stated the following to the potential jurors:

If, after your deliberations, you do not have a doubt for which a reason can be given as to the defendant's guilt, you are satisfied beyond a reasonable doubt. If, after your deliberations, you do not have a doubt for which a reason can be given as to the defendant's guilt, you are not satisfied beyond a reasonable doubt.

The bailiff met with jurors for about twelve minutes. She also left a copy of a document titled "Notes for Jurors" that included a statement that the job of the jurors was to "decide what really happened." At the end of the trial, the jury entered a guilty verdict.

Motion for a New Trial

Slaney asked for a new trial based on excluded evidence and the bailiff's meeting with the jurors. Upon learning the contents of the "Note for Jurors," Slaney submitted a consolidated request for a new trial. Defense counsel submitted a declaration that included an email exchange with a juror who remembered receiving the instructions. The presiding juror submitted a declaration to the court after the prosecutor asked her about the "Notes for Jurors." She stated in her declaration:

5. I have never seen the document sent to me labeled "Notes for Jurors" prior to [the prosecutor] sending me the document over email on August 7, 2018.

6. During the deliberations of the jury in this matter, I do not recall myself nor any other juror ever referencing or referring to the document labeled "Notes for Jurors."

7. During the deliberations of the jury we relied only upon the written instructions of law provided to us by the Judge and given to us in our jury binders provided by the court.

Slaney submitted a declaration that he would have testified had he known

the jury would be told it was to decide what really happened.  The trial court denied his request for a new trial.

Slaney appeals.

ANALYSIS

Evidentiary Challenges

Slaney contends that by excluding evidence of M.P.'s medical appointment and limiting his cross-examination, the trial court denied him the right to present a defense.  We disagree.

The United States and Washington State constitutions guarantee a defendant the right to present a complete defense.[2]  This right includes the right to confront and cross-examine adverse witnesses.[3]  But, trial courts "retain wide latitude. . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[4]  And, a defendant has no right to present irrelevant or inadmissible evidence.[5]

---

[2] U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, § 22; Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Wittenbarger, 124 Wn.2d 467, 474, 880 P.2d 517 (1994).

[3] State v. Romero-Ochoa, 193 Wn.2d 341, 346, 440 P.3d 994 (2019); State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).

[4] State v. Lee, 188 Wn.2d 473, 487, 396 P.3d 316 (2017) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

[5] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.3d 354 (2006).

Washington appellate courts use a two-step standard to review a claim that an evidentiary ruling violated a defendant's right to present a defense.[6]  The court first reviews the evidentiary ruling for abuse of discretion and reviews de novo whether that ruling violated the defendant's right to present a defense.[7]  "A court abuses its discretion when its decision adopts a view that no reasonable person would take or that is based on untenable grounds or reasons."[8]

Evidence must be relevant to be admissible.[9]  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10]  A court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[11]  A party may impeach a witness using a prior inconsistent statement through cross-examination, or in certain circumstances, through the introduction of extrinsic evidence.[12]

The evidence from the Evergreen medical appointment contains no mention of the incident, of Slaney's name, or of any sexual encounter on the date in question.

During the pre-trial interview, Knox described the conversation she had with

---

[6] State v. Arndt, 194 Wn.2d 784, 797, 453 P.3d 696 (2019).

[7] Arndt, 194 Wn.2d at 797.

[8] State v. Boyle, 183 Wn. App. 1, 12-13, 335 P.3d 954 (2014).

[9] ER 402.

[10] ER 401.

[11] ER 403.

[12] ER 613.  Slaney also raises ER 608 but does not explain how the evidence he sought to admit is proper prior conduct evidence to be used for impeachment under ER 608.

M.P.  Knox and defense counsel had the following exchange.

[Defense Counsel]: Okay. Now, during the appointment on March 20, 2017 did M-P tell you that she had been sexually assaulted, or raped, or that anyone had had nonconsensual sex with her?

[Knox]: Not in . . . so many words.

[Defense Counsel]: What do you mean by that?

[Knox]: . . .if I could describe her presence during that appointment, it [was] shell shocked, and she shared very little information with me that day. It was like pulling teeth to try to get information from M-P.

[Defense Counsel]: So, did [she] tell you that she had been sexually assaulted or raped by anyone?

[Knox]: Not in those words, no.

[Defense Counsel]: Did she use any other words to describe that type of conduct?

[Knox]: In my recollection, no. . . . I asked her. . .  based on some other information . . . not even specifically about, . . . an incident where she was semi-conscious and thought someone was on top of her, but I got very little if any information back from her about that experience.

[Defense Counsel]: Did she tell you anything about making a report to the police?

[Knox]: No.

[Defense Counsel]: Did she tell you anything about a person named Ale[c] Slaney?

[Knox]: No.

[Defense Counsel]: When was the first time that you heard about the rape allegation?

[Knox]: It was several days after that appointment when . . .  her mother told me that M-P was going to go ahead and press charges.

[Defense Counsel]: You referenced some other information that you had?

8

[Knox]: Correct.

[Defense Counsel]: . . . [P]rior to the appointment . . . that . . . caused you to ask a question. What was the . . . prior information?

[Knox]: The prior information . . . was from her mother . . . who . . . was concerned about M-P.
. . .

[Defense Counsel]: Did . . . the mother tell you about an alleged sexual assault before the appointment on March 20th?

[Knox]: . . . [S]he mentioned that at one point M-P had attended a party . . . I believe off campus, and . . . slept at that home that night, and at some point during the middle of the night or early the next morning . . . woke up with someone on top of her.

[Defense Counsel]: Was there any other information that you recall the mother gave you about that allegation at that point?

[Knox]: No. No.

Knox said M.P. was in "a dazed, almost shell-shocked state."

When defense counsel asked whether Knox asked M.P. questions about the incident, she answered that she remembered "saying something like, 'Let me tell you what I know, and then you chime in and, you know, fill in the details,' and, um, and, uh, and that was how I, how I asked her. And again, um, I got very, very little information back from her." Defense counsel asked if M.P. responded to the prompt and Knox said "only in a general sense . . . as part of other information" she asked about. Defense counsel asked whether M.P. provided "any information about that incident?" Knox responded that she "remember[ed] some of the details . . . in terms of . . . with whom she had gone to [the] party," that they'd decided to stay there and not go home. She said "that was really the extent of it, other than what I had heard from her mother."

Slaney asserts that M.P.'s failure to explicitly discuss the incident with Knox

9

is a material omission because the incident was a fact that a person in the same circumstances would have "naturally" asserted.[13] So, he claims he should have been allowed to introduce the evidence from the appointment about this omission to impeach her.

We find Slaney's argument unconvincing. Knox and M.P.'s mother are friends. A daughter attending a medical appointment, which her mother scheduled with her physician friend months after an incident, would not naturally be expected to assert she had been assaulted, particularly given the purpose of the appointment, and the fact that M.P. barely spoke about it, and was in a "dazed, almost shell-shocked state." And, Knox did not say that no discussion about the incident occurred during the appointment, only that M.P. was not forthcoming. While some might view this evidence as minimally relevant, it is not a clear material omission that makes it highly probative.

The risks of confusing the issues or misleading the jury by introducing this minimally relevant evidence outweighed its probative value.[14] M.P.'s mother made the appointment out of concern for M.P.'s sexual health and not to treat any injury. Evidence of M.P.'s failure to discuss the charged incident at the appointment required context about the purpose of the appointment, who made the appointment and why, and the information gathered by Knox to accomplish that purpose. The

---

[13] Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 65 L.Ed.2d. 86 (1980). For example, Slaney's attorney asserted during one of the pretrial hearings on the evidence, "This is the type of appointment where if you had been sexually assaulted, you would disclose that, or at least we should be entitled to make that argument to the jury."
[14] ER 403.

court and the parties could have attempted to sanitize this evidence. But, to provide context, the evidence would need to include some aspects of M.P.'s sexual history, her potential exposure to sexually transmitted diseases, and any steps M.P. had taken to protect herself from them. So, the evidence would have remained potentially confusing or misleading. And, it would have provided the jury inappropriate information about M.P.'s sexual history.

While Slaney suggests that jurors are able to tolerate information about a victim's sexual activity without prejudicing the case unduly, he does not explain how the minimal relevancy of this evidence warrants the introduction of all the evidence necessary to put the appointment in context for the jury. The trial court did not abuse its discretion by excluding the evidence.

Slaney also asserts he should have been able to introduce the evidence as a prior inconsistent statement consisting of an omission. During a defense interview, M.P. and defense counsel had the following exchange regarding her appointment at Evergreen.

[Defense Counsel]: Okay. And you talked with [Knox] about Alec?

[M.P.]: I didn't give any -- I don't think I even gave a name. I don't think [we] went in depth about it. Maybe we did. Maybe a little bit. I don't -- I didn't share much with her. It was more like she wanted to know. Like . . . because I was there for testing she wanted to know, you know, if he had used a condom, and things like that.

M.P. did not say in the interview that she explicitly told Knox about the incident. So, she made no prior inconsistent statement. And, the trial court did not abuse its discretion by excluding the evidence.

Slaney assigns error to finding six of the order denying a new trial stating,

Defendant's argument that he was unable to cross-examine and constitutionally confront M.P. with respect to any potential exculpatory evidence is without merit. Judge Smith's trial court order excluding the "Evergreen Clinic Appointment" but placed no restriction upon the defendant's ability to challenge M.P. with any inconsistency in her testimony at trial, and her prior non-medical disclosures.

Where findings of fact and conclusions of law are challenged, this court limits its review to determining whether substantial evidence supports the trial court's findings and whether those findings support its legal conclusions.[15] Substantial evidence is evidence sufficient to persuade a reasonable person of the truth of the finding.[16] This court considers unchallenged findings of facts as true on appeal.[17] This court reviews any conclusions of law, "including those mistakenly characterized as findings of fact, de novo."[18]

The trial court did not issue an order explicitly prohibiting cross-examination but it did restrict admission of the evidence related to the medical appointment. But, the court did not restrict Slaney's ability to challenge M.P. with inconsistencies "in her testimony at trial, and prior non-medical disclosures", so this finding is supported by substantial evidence.

Slaney asserts, that by excluding this evidence, the trial court denied him the right to present a defense. He claims his case rested on M.P.'s credibility, so he needed impeachment evidence. He also asserts his argument, that M.P. changed her story, required both evidence that she changed her story because

---

[15] Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc., 102 Wn. App. 422, 425, 10 P.3d 417 (2000).
[16] State v. Vickers, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).
[17] State v. Gaines, 154 Wn.2d 711, 716, 116 P.3d 993 (2005).
[18] In re Estate of Haviland, 162 Wn. App. 548, 561, 255 P.3d 854 (2011).

Neuberger was angry with her, and evidence that she changed her story to appease her mother who was angry about M.P. being sexually active. But, Slaney's primary defense was that M.P. could and did consent. And, he had the opportunity to present this via cross-examination of Neuberger, who described what she saw that made her initially believe the sex was consensual. He also provided evidence that Neuberger was angry with M.P. and submitted the evidence of the text conversation he claims demonstrated that M.P. changed her story in response to Neuberger's anger. The trial court did not deny him the right to present a defense when it excluded the evidence.

Slaney asserts the trial court violated his right to confront witnesses. But, he does not explain how the court violated his confrontation right. Slaney seems to be conflating the right to a defense with the right to confront witnesses, which are both protected by the Sixth Amendment of the U.S. Constitution and article I, section 22 of the Washington State Constitution. Here, he did have the opportunity to confront adverse witnesses. And, as discussed above, any limitation of cross-examination did not violate his constitutional right to a defense.

Slaney challenges the following conclusions of law from the court's order denying his motion for a new trial.

> 3. …Thus, the claimed omission was immaterial, in context, and not inconsistent since, as Tegland opines, a witness may (only) be impeached who omits a material detail that, under the circumstances, would have been included if true. Here, while it is clear that there is no requirement to disclose sexual assault at medical appointments, it is not clear that such information would have naturally been asserted.
>
> 4. …He argues that such interview statement--about whether MP had talked to any medical providers about what happened with

13

[Slaney]--is probative of her character for truthfulness. Defendant correctly argues that it is a valid consideration that MP was a central witness in the case. As non-reputation evidence (ER 608(a)), however, such allowance is only given at the discretion of the court. And considering the above context for the "omission" and the attenuation of the statement to defense counsel, it was not an abuse of discretion.

5. Additionally, any minimal probative value would have been substantially outweighed by the danger of confusing/misleading the jury, and unfair prejudice, per ER 403...

As discussed above, M.P.'s failure to explicitly describe the incident at her Evergreen appointment was not a material omission. And, the only way the jury could understand the context for the non-disclosure would be to admit the substance of the appointment and aspects of M.P.'s general sexual activity and sexual health practices. This context information risked misleading the jury. Slaney fails to establish the trial court erred in making these conclusions of law.

Information Sheet for Jurors

Slaney contends that an information sheet provided by the bailiff to the jury was an undisclosed written instruction that misrepresented the State's burden of proof, undermined the presumption of innocence, violated Slaney's right to a public trial, violated his right to be present at all critical stages of trial, because he did not learn about it until after the trial, and violated the prohibition against a judge's ex parte contact with jurors. The information sheet provided miscellaneous information to jurors. Unfortunately, it included a statement that it was the jury's "job . . . decide what really happened".

Burden of Proof and Presumption of Innocence

Slaney asserts that the information sheet and the trial court's statement

14

before voir dire constituted improper instructions about the presumption of innocence and the State's burden of proof. We agree the statements were improper.

The jury's presumption that the defendant is innocent until proven guilty "is the bedrock upon which the criminal justice system stands."[19] If a trial court provides instructions that misstate reasonable doubt or shift the burden of proof to the defendant, it commits a constitutional error.[20] This is because of the fundamental constitutional due process requirement that the State bear the burden of proving every element of a crime beyond a reasonable doubt.[21] The jury's job is not to determine the truth of what happened…Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt.[22]

Before voir dire, the judge told the potential jurors:

> A reasonable doubt is one for which a reason exists . . . If, after your deliberations, you do not have a doubt for which a reason can be given as to the defendant's guilt, you are satisfied beyond a reasonable doubt. If, after your deliberations, you do have a doubt for which a reason can be given as to the defendant's guilt, you are not satisfied beyond a reasonable doubt.

The bailiff provided the jurors with a document titled "Notes for Jurors." This sheet of general information included the statement, "Your job as a Juror is to listen to all the evidence presented at trial, then 'decide the facts' - decide what really happened."

The oral instruction before voir dire misstated the definition of reasonable

---

[19] State v. Bennett, 161 Wn.2d 303, 315, 165 P.3d 1241 (2007).
[20] State v. McCullum, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983).
[21] U.S. CONST. amend. XIV; State v. Camara, 113 Wn.2d 631, 640, 781 P.2d 483 (1989).
[22] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

doubt.[23]  The information sheet mistakenly tells jurors their job is to decide what happened. The juror's role is to determine whether, based on the evidence, the state had proven the elements of the crime charged beyond a reasonable doubt.[24]

Slaney first asserts that the instruction sheet created a structural error in the proceedings requiring reversal without any showing of prejudice.  We disagree.

A trial court's failure to correctly instruct the jury on reasonable doubt is a structural error that violates a defendant's right to a jury trial.[25]  Here, the trial court gave the following jury instruction orally and in writing.

> The defendant has entered a plea of not guilty.  That plea puts in issue every element of the crime charged.  The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.  The defendant has no burden of proving that a reasonable doubt exists.
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

The court also instructed the jury that each of the elements of the crime charged "must be proved beyond a reasonable doubt."  This same instruction stated "On the other hand, if, after weighing all the evidence, you have a reasonable doubt as

---

[23] State v. Kalebaugh, 183 Wn.2d 578, 582, 355 P.3d 253 (2015).

[24] The State points out that the note includes the same language as found on the King County Superior Court website.  But, the King County Superior Court's inclusion of this language on its website does not turn otherwise improper language into proper language.

[25] Sullivan v. Louisiana, 508 U.S. 275, 279-281, 113 S.Ct. 2078, 124 L.Ed.2d 192 (1993).

to any one of elements (1), (2), or (3), then it will be your duty to return a verdict of not guilty".

These instructions correctly stated the law about the State's burden and reasonable doubt. So, Slaney fails to establish structural error based on the misstatement in the instruction sheet. We must still address whether the court's incorrect oral instruction and the information sheet was a harmless error.[26]

Courts presume that constitutional error is prejudicial.[27] A constitutional error is harmless if the appellate court is "persuaded beyond a reasonable doubt that the jury would have reached the same result in absence of the error."[28]

As described above, the court provided oral and written instructions that properly stated the State's burden of proof. Also, both the prosecutor and defense counsel told the jury in closing that the State had to prove each element of the charge beyond a reasonable doubt. Defense counsel reminded the jurors that the defense bore no burden and that Slaney was presumed innocent "and the only time that ever may change is if [the entire jury] unanimously agree that the state has proven every single element of the crime beyond a reasonable doubt." Defense also identified the evidence that it claimed raised a reasonable doubt.

This case is similar to State v. Kalebaugh[29] where the Washington Supreme Court concluded that, because the trial court provided instructions that correctly

---

[26] State v. Brown, 147 Wn.2d 330, 332, 339-40, 58 P.3d 880 (2002). ("We hold that an erroneous jury instruction may be subject to harmless error analysis if the error does not relieve the State of its burden to prove each element of the crime charged"); Kalebaugh, 183 Wn.2d at 585.

[27] State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

[28] State v. Fisher, 185 Wn.2d 836, 847, 374 P.3d 1185.

[29] Kalebaugh, 183 Wn.2d at 585.

stated the State's burden and what constituted a "reasonable doubt" numerous times in both written and oral form, its erroneous oral statement of what constituted "reasonable doubt" was harmless.   Here, as in Kalebaugh, the trial court's provision of proper instructions ensured the jury understood its duty.   The errors were harmless.

Slaney asserts the following written exchange between the judge and jury during deliberations establishes the jury did not understand the State's burden of proof.   During deliberations, the jury submitted the following question.

> According to instruction 3, paragraph 1, sentence 4, and the entirety of section 4, we are not to use the fact that the defendant did not testify to infer guilt or prejudice.   However, according to section 3, paragraph 3[,] we are instructed that we may consider lack of evidence in reaching our verdict.   Does this reasoning extend to considering a guilty verdict?  [Should we consider defendant's failure to testify] not [as] prejudice against the defendant for not testifying [, but] rather the absence of evidence … likely resulted from lack of defense testimony?

The court responded, "Please reread the jury instructions.   The defendant is not required to testify.   You may not use the fact that the defendant has not testified to infer guilt or to prejudice him in any way."

This exchange can be viewed as demonstrating the jury's diligence in following the written instructions.   So, contrary to Slaney's assertion, it does not clearly demonstrate that the jury did not understand the presumption of innocence, the reasonable doubt standard, or the State's burden of proof.   Slaney challenges certain findings and conclusions in the trial court's order denying his motion for a new trial relating to its decision that these errors were harmless. Because we independently review the record to make this determination, we do not need to address these challenges.

Prohibition Against Ex Parte Contact with Jurors

Slaney also asserts the trial court violated the prohibition against ex parte contact with jurors.

Generally, the trial court should not communicate with the jury if the defendant is not present.[30] If the trial court engages in ex parte communication related to the substance of the trial, the trial judge "generally should disclose the communication to counsel for all parties."[31] Because improper communication between the court and the jury is a constitutional error, the State bears the burden of showing that such error was harmless beyond a reasonable doubt.[32]

As discussed above, the information sheet provided jurors contained a serious misstatement of the law. But, as we have explained, this error was harmless.

Right to a Public Trial and Right to be Present at all Critical Stages of Trial

Slaney asserts the document the bailiff left in the jury room violated his right to a public trial. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the accused a right to a public

---

[30] State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997).
[31] Bourgeois, 133 Wn.2d at 407 (quoting Rushen v. Spain, 464 U.S. 114, 119, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983)).
[32] Bourgeois, 133 Wn.2d at 407.

trial.[33]  Violation of the public trial right is a structural error that a reviewing court presumes is prejudicial.[34]  This court reviews constitutional issues de novo.[35]

Before deciding if a trial court violated a defendant's right to a public trial, this court must determine if "the proceeding at issue implicates the public trial right, thereby constituting a closure."[36]  The experience and logic test determines whether the challenged proceeding implicates the public trial right.[37]  The "experience" prong of this test asks "'whether the place and process have historically been open to the press and general public.'"[38]

The process of leaving an information sheet for jurors in the jury room is not something typically open to the public and that implicates the public trial right.  So, Slaney cannot establish that this activity violated this right.  The trial court did not err in concluding "the mere fact of the 'Notes for Jurors' document being placed in the jury room did not represent a court closure under the Washington State Constitution and therefore no Bone-Club analysis was required by the trial court."

Slaney also asserts that trial court violated his right to be present at all critical stages of trial.  Leaving the information sheet in the jury room did not implicate this right.

---

[33] Presley v. Georgia, 558 U.S. 209, 212, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010); State v. Bone-Club, 128 Wn.2d 254, 257, 906 P.2d 325 (1995).

[34] State v. Wise, 176 Wn.2d 1, 16, 288 P.3d 1113 (2012).

[35] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).

[36] State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012).

[37] State v. Smith, 181 Wn.2d 508, 514, 334 P.3d 1049 (2014).

[38] Sublett, 176 Wn.2d at 73 (quoting Press-Enterprise Co. v. Superior Court of California for Riverside County, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1(1986)).

A defendant has the constitutional right to be present when evidence is being presented.[39]  And, a defendant has the "right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"[40]  But, a defendant does not have a right to be present during proceedings such as in-chambers or bench conferences between the court and counsel on legal matters[41] provided those matters do not require a resolution of disputed facts.[42]

Delivery of an information sheet is not a critical stage of the trial that implicated Slaney's right to be present.  Slaney provides no authority to the contrary.[43]  So, Slaney's argument to the contrary fails.

<u>Cumulative Error</u>

Slaney contends that, even if all of the errors were harmless, cumulatively they denied him a fair trial.

The cumulative error doctrine applies when a combination of trial errors denies the accused a fair trial, though one of the errors alone would not warrant

---

[39] <u>Matter of Personal Restraint of Lord</u>, 123 Wn. 2d 296, 306, 868 P.2d 835 (1994).

[40] <u>United States v. Gagnon</u>, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed. 2d 486 (1985) (quoting <u>Snyder v. Commonwealth of Mass.</u>, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575 (1934)).

[41] <u>United States v. Williams</u>, 455 F.2d 361 (9th Cir. 1972).

[42] <u>People v. Dokes</u>, 79 N.Y.2d 656, 584 N.Y.S.2d 761, 595 N.E.2d 836 (1992).

[43] <u>State v. Logan</u>, 102 Wn. App. 907, 911, 10 P.3d 504 (2000) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.") (quoting <u>DeHeer v. Seattle Post-Intelligencer</u>, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

reversal.[44]  Even when this court decides that each error standing alone would otherwise be harmless, cumulative error may warrant this court's reversal of a trial court decision.[45]  But, if the errors are few and do not affect the trial's outcome, a court will not find cumulative error.[46]

Here, the trial court erred in its statement to the jurors before voir dire and in providing the "Notes to Jurors." But, as discussed above, these errors combined were harmless.  And, Slaney does not establish that the court erred in excluding evidence.  So, he does not establish cumulative error.

Denial of Motion for New Trial

Slaney claims the trial court should have granted his request for a new trial because the excluded evidence and the bailiff's note were irregularities that prejudiced him.

This court reviews a trial court's denial of a motion for a new trial for abuse of discretion.[47]  "A court abuses its discretion when its decision adopts a view that no reasonable person would take or that is based on untenable grounds or reasons."[48]  "We review a trial court's denial of a new trial more critically than ... its grant of a new trial because a new trial places the parties where they were before, but a decision denying a new trial concludes their rights."[49]

---

[44] In re Pers. Restraint of Yates, 177 Wn.2d 1, 65–66, 296 P.3d 872 (2013).
[45] State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).
[46] Weber, 159 Wn.2d at 279.
[47] State v. Boyle, 183 Wn. App. 1, 12, 335 P.3d 954 (2014).
[48] Boyle, 183 Wn. App. at 12-13.
[49] M.R.B. v. Puyallup Sch. Dist., 169 Wn. App. 837, 848, 282 P.3d 1124 (2012).

22

Only when an irregularity at trial so prejudices the defendant that only a new trial can provide the defendant with a fair trial, should the trial court grant a mistrial.[50] Because the trial court is in the best position to determine if an irregularity at trial prejudiced the defendant, it has broad discretion to grant or deny a mistrial based on those irregularities.[51]

Slaney asserted to the trial court the exclusion of evidence of the Evergreen appointment, the erroneous statement by the court, and presence of the Notes for Jurors, required the trial court to grant him a mistrial and new trial. But, as discussed above, the trial court did not err in excluding the evidence and the trial court's statement and Notes for Jurors were harmless error. So, the trial court did not abuse its discretion by denying Slaney's request for a new trial.

## CONCLUSION

We affirm. Because the excluded evidence was only minimally relevant and risked confusing and misleading the jury, the trial court did not abuse its discretion by its decision about it. And, because Slaney could defend himself without the evidence, and its exclusion does not implicate his right of confrontation, the trial court did not violate his right to a defense or to confront witnesses when it excluded it.

The trial court made misstatements of law in an oral instruction before voir dire describing "reasonable doubt," and in a description of a juror's role in "Notes to Jurors." Because the trial court also provided accurate oral and written

---

[50] State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015).
[51] Wade, 186 Wn. App. at 773.

instructions to the jury, and because both attorneys clearly and repeatedly articulated the correct standard and burden, these errors were harmless. Slaney does not show prejudice from cumulative error and the trial court did not abuse its discretion by denying a new trial.

_Leach, J._

WE CONCUR:

_Brunner, J_   _Verellen, J_