# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 71965-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| KANE BOYLE, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 28, 2014 |

LEACH, J. — Kane Boyle appeals his conviction for felony harassment of a criminal justice participant. He contends that insufficient evidence of a "true threat" supports his conviction. He also claims that the jury instructions did not require that the State prove every element of this crime beyond a reasonable doubt. Finally, he claims that juror misconduct violated his right to a fair trial. Because the record contains sufficient evidence of a "true threat," the jury instructions correctly stated the law, and Boyle fails to show juror misconduct, we affirm.

## Background

While on patrol the evening of December 21, 2011, Port Orchard Police Officer Stephen Morrison saw a man, later identified as Boyle, get out of a truck in a local restaurant parking lot. Boyle had difficulty walking and appeared intoxicated. After Boyle got back in the truck, drove away briefly, then returned

and parked, Morrison contacted him. Based upon his observations and this contact, Morrison arrested Boyle for DUI (driving under the influence of an intoxicant) and placed him in wrist restraints. At this point, Boyle became "really very angry" and started "yelling profanities." Morrison placed Boyle in the backseat of his patrol car. Boyle continued shouting profanities while Morrison read him the Miranda[1] warning and then began to kick the door panel of the patrol car. Boyle was "getting worked up more and more" and shouting comments that caused Morrison to become concerned. At this point, Morrison began making notes "almost verbatim" of Boyle's statements. He noted that the tone of Boyle's voice was "[e]xtremely angry. He was furious." Boyle made a series of threatening statements. "People will look you and your family up and do them in. I would never threaten your family." "I would never attack children, but cops and child molesters are fair game." "People should shoot you guys in the face and I'll be glad when they do. I would not do it myself, but you know someone will." "Remember Forza Coffee, it was good stuff." "Forza Coffee, that's what should happen to all cops and their families." "You wait and see what happens when I get out. I'm not threatening you." "I hope your children die." "F**k your face, f***ing swine. Read my record. Read it twice." "Someone will kill you and your family. I'm not saying it's going to be me, but someone is going to snipe cops and their families."

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged Boyle with one count of felony harassment (threats to kill) and one count of felony harassment (criminal justice participant). The jury convicted Boyle of felony harassment (criminal justice participant) and acquitted him of the other count. Before sentencing, Boyle moved for a new trial based upon allegations of erroneous jury instructions and juror misconduct. The court denied the motion.

Boyle appeals.

Analysis

Sufficiency

Boyle contends that the State did not present sufficient evidence of three claimed elements of felony harassment of a criminal justice participant: (1) "a reasonable person in Boyle's position would have known his statements would be perceived as a threat," (2) "a reasonable criminal justice participant in the officer's position would have interpreted Boyle's statements as a threat," and (3) "it was apparent to the officer that Boyle had the present and future ability to carry out any threat." We review constitutional questions de novo, and in a case involving pure speech, we engage in an independent review of the entire record to ensure a conviction is not a "forbidden intrusion into the field of free expression."[2] Sufficient evidence supports a conviction if, "'after viewing the evidence in the light most favorable to the prosecution, <u>any rational trier of fact</u>

---

[2] <u>State v. Locke</u>, 175 Wn. App. 779, 790, 307 P.3d 771 (2013), <u>review denied</u>, 179 Wn.2d 1021 (2014).

could have found the essential elements of the crime <u>beyond a reasonable doubt</u>."[3] For this analysis, circumstantial evidence is as reliable as direct evidence.[4] A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from that evidence.[5] A reviewing court need not be convinced of the defendant's guilt beyond a reasonable doubt, but only that substantial evidence supports the State's case.[6] We defer to the trier of fact on issues of credibility or persuasiveness of the evidence.[7]

A defendant is guilty of harassment if, without lawful authority, he or she "knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person" and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out."[8] This offense is a class C felony if the defendant "threaten[s] to kill the person threatened or any other person" or "harasses a criminal justice participant who is performing his or her duties at the time the threat is made" or because of the criminal justice participant's actions or decisions in the course of his or her official duties.[9] When the threat involves a criminal justice participant, "the threat must be a fear that a reasonable criminal justice participant would have under all the

_____

[3] <u>State v. Green</u>, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).
[4] <u>State v. Myers</u>, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997).
[5] <u>State v. Salinas</u>, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[6] <u>State v. Fiser</u>, 99 Wn. App. 714, 718, 995 P.2d 107 (2000).
[7] <u>State v. Johnston</u>, 156 Wn.2d 355, 365-66, 127 P.3d 707 (2006).
[8] RCW 9A.46.020(1)(a)(i), (b).
[9] RCW 9A.46.020(2)(b)(iii), (iv), (4)(a).

circumstances."[10]  "Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat."[11]

A statute that makes a threat a crime may proscribe only "true threats."[12] A "true threat" is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"[13] This objective standard focuses on the speaker, who need not actually intend to carry out the threat: "[i]t is enough that a reasonable speaker would foresee that the threat would be considered serious."[14] "A true threat is a serious threat, not one said in jest, idle talk, or political argument."[15] An indirect threat may constitute a true threat.[16]

Boyle argues that his statements were at most "predictions, expressing Boyle's opinion that police officers are at risk but not from him," "an immature hope that something bad would happen to Officer Morrison's family," or even Boyle's "political view." But viewing the evidence in the light most favorable to

---

[10] RCW 9A.46.020(2)(b).

[11] RCW 9A.46.020(2)(b).

[12] State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010); Locke, 175 Wn. App. at 789.

[13] Locke, 175 Wn. App. at 789 (alteration in original) (internal quotation marks omitted) (quoting State v. Allen, 176 Wn.2d 611, 626, 294 P.3d 679 (2013)).

[14] Schaler, 169 Wn.2d at 283; State v. Kilburn, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004).

[15] Kilburn, 151 Wn.2d at 43.

[16] Locke, 175 Wn. App. at 792 (citing Kilburn, 151 Wn.2d at 48).

the State, the record shows that Boyle repeatedly stated that Officer Morrison and his family should be attacked or killed. He threatened that "[p]eople will look you and your family up and do them in" and warned, "[C]ops and child molesters are fair game." He expressed a desire that "[p]eople should shoot you guys in the face." He warned, "You wait and see what happens when I get out" and invited Morrison to "[r]ead my record. Read it twice." Morrison's check of Boyle's criminal record revealed a conviction for assault. Boyle predicted, "Someone will kill you and your family. I'm not saying it's going to be me, but someone is going to snipe cops and their families."

The nature of a threat depends upon a totality of the circumstances, and a reviewing court does not limit its inquiry to a literal translation of the words spoken.[17] Among the facts and circumstances the jury could consider here was the murder of four Lakewood, Washington, police officers two years before at a Café Forza coffeehouse, to which Boyle made two deliberate and direct references.[18] And though Boyle followed several of his threats with "I'm not threatening you" or "I would never threaten your family," his "furious" demeanor, violent kicking of the patrol car door, "continual[ ] yelling," reference to his criminal record, and repeated threats strongly contradict the literal translation of those disclaimers. Boyle's statements cannot be described fairly as "jest, idle

---

[17] Locke, 175 Wn. App. at 790.

[18] See Locke, 175 Wn. App. at 792 (noting relevance of recent shooting of congresswoman to threat inquiry, especially where defendant was aware of attack).

talk, or political argument," especially when considered as a whole. A juror could reasonably find Boyle's statements to be a "serious expression of intention to inflict bodily harm upon or to take the life of" Morrison or his family and that a reasonable speaker would foresee that Morrison would consider them serious.[19] Similarly a juror could reasonably find Morrison's fear that Boyle would carry out his threats upon his release "a fear that a reasonable criminal justice participant would have under all the circumstances." Sufficient evidence supports Boyle's conviction for felony harassment.

## Jury Instructions

Boyle claims the trial court instructions misstated one element of felony harassment. He asserts that the State had to prove both his "present and future" ability to carry out an expressed threat. We disagree.

Boyle's proposed jury instruction defining felony harassment included this sentence: "It is not felony harassment if it is apparent to the criminal justice participant that the defendant does not have the present and future ability to carry out the threat." Boyle's proposed "to convict" instruction required the jury to find "[t]hat it was apparent to Stephen Morrison that the defendant had the present and future ability to carry out the threat." Unlike Boyle's proposed definition instruction, this proposed "to convict" instruction does not mirror the text of RCW 9A.46.020(2)(b), which states: "Threatening words do not constitute

---

[19] Morrison testified that though he rarely spoke about his work to his family, after Boyle's arrest he warned his wife to be "very vigilant" in watching for strangers around their home.

-7-

harassment if it is apparent to the criminal justice participant that the defendant does not have the present and future ability to carry out the threat."

The trial court rejected Boyle's instructions. Instead, the court's instruction defining felony harassment stated, "It is not harassment if it is apparent to the criminal justice participant that the person does not have the ability to carry out the threat." The court's "to convict" instruction required the jury to find that Boyle knowingly threatened "to cause bodily injury immediately or in the future to Stephen Morrison or his family," that Boyle's words or conduct "placed Stephen Morrison in such a fear that a reasonable criminal justice participant would have that the threat would be carried out," and that "[i]t was apparent to Stephen Morrison that the defendant had the ability to carry out the threat." Boyle contends that the court's instructions "misstated this element of the crime and reduced the State's burden of proof." He reasons that because he was handcuffed, intoxicated, and in police custody, he had no present ability to carry out his threats, and therefore his statements cannot satisfy the test for felony harassment.

We review jury instructions and questions of statutory interpretation de novo.[20] When construing a statute, we primarily seek to ascertain and carry out the legislature's intent.[21] Statutory interpretation begins with the statute's plain

---

[20] State v. Sweat, 180 Wn.2d 156, 159, 322 P.3d 1213 (2014); Singh v. Edwards Lifesciences Corp., 151 Wn. App. 137, 150, 210 P.3d 337 (2009) (citing Thompson v. King Feed & Nutrition Serv., Inc., 153 Wn.2d 447, 453, 105 P.3d 378 (2005)).
[21] State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012).

meaning, which we discern from the ordinary meaning of its language in the context of the whole statute, related statutory provisions, and the statutory scheme as a whole.[22] If the statute's meaning is unambiguous, our inquiry ends here.[23]

RCW 9A.46.020 prohibits a threat that threatens bodily injury "immediately or in the future." For harassment elevated to a felony because the person threatened is a criminal justice participant, the statute specifies, "Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat."[24] Boyle misreads the statute when he argues, "Despite its structure, the sentence clearly states that threatening words only constitute harassment if it is apparent to the criminal justice participant that the defendant has the present and future ability to carry them out." To the contrary, as the trial court stated, "[T]his sentence is phrased as an exception, not as an element," and it plainly states that threatening words are not harassment if it is apparent to the criminal justice participant that (1) the speaker does not have the present ability to carry out the threat and (2) the speaker does not have the future ability to carry out the threat. Conversely, if it was apparent to the criminal justice participant that the speaker had either the present ability or the future ability to

---

[22] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013); Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).
[23] Lake, 169 Wn.2d at 526.
[24] RCW 9A.46.020(2)(b).

carry out the threat, the statements would constitute harassment. RCW 9A.46.020(1), which defines harassment to include threats to cause bodily injury "immediately or in the future," is consistent with this conclusion.

Boyle's suggested reading would produce some absurd results. If it must be apparent to the criminal justice participant that the speaker have both the present and the future ability to carry out the threats, then the statute would not prohibit many electronic threats, as it explicitly does.[25] No threats made to third persons not in the speaker's presence would be actionable, nor would any threats of exclusively future harm. The court's instructions here correctly stated the law and did not diminish the State's burden.

Juror Misconduct

Based on his attorney's posttrial conversations with several jurors, Boyle requested a new trial because of alleged juror misconduct. Boyle's counsel stated that juror 4, a nurse, told her that this juror had been held hostage for 12 hours by a patient who threatened to kill her. Juror 4 did not disclose this during voir dire. At a hearing on Boyle's motion, juror 4 testified that in her conversation with defense counsel, she had referred to an ICU (intensive care unit) patient who tried to kick her when she entered his room during her 12-hour shift and denied ever being held hostage or telling counsel that she had been held hostage by a patient. She stated that in deliberations she discussed the incident as an example of how she takes informal notes of an incident before transferring

---

[25] RCW 9A.46.020(1)(b).

-10-

them to an official report that becomes the permanent record, similar to Officer Morrison's police report. Boyle contends that juror 4 "committed misconduct by withholding relevant information in voir dire and interjecting related information during deliberation."

We will disturb a trial court's denial of a motion for a new trial only where the trial court abused its discretion or erroneously interpreted the law.[26] A court abuses its discretion when its decision adopts a view that no reasonable person would take or that is based on untenable grounds or reasons.[27] A party who moves for a new trial based on a juror's alleged failure to disclose information during voir dire must show (1) that the information was material and (2) that truthful disclosure would have provided a basis for a challenge for cause.[28]

Here, juror 4 stated that she did not describe this incident during voir dire because she did not connect it to the charges against Boyle and that her experience with a violent patient did not bias or prejudice her against Boyle. Boyle fails to show how this information was material to the charges or likely to be the basis of a successful challenge for cause.[29] The trial court found "[t]hat the experiences of the juror were not something about which she was directly asked and that she did not fail to disclose any information that she was asked to disclose."

---

[26] State v. Cho, 108 Wn. App. 315, 320, 30 P.3d 496 (2001).
[27] State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).
[28] Cho, 108 Wn. App. at 321.
[29] Contra Cho, 108 Wn. App. at 327-28 (fact that juror in criminal trial was retired police officer was material and likely basis for challenge for cause).

Juror 4 did not commit misconduct by impermissibly sharing in deliberations "specialized knowledge" that was "outside the realm of most jurors' experience." A juror properly brings his or her opinions, insights, common sense, and everyday life experience into deliberations.[30] The trial court found that "the experiences that [juror 4] described in deliberation were a valid application of life experience and common sense used to weigh and evaluate the evidence presented at trial, and [were] not the introduction of any improper new evidence concerning the case." We defer to the court's finding that juror 4's testimony was "credible and truthful." The court did not abuse its discretion in denying Boyle's motion for a new trial.

## Conclusion

Because sufficient evidence supports Boyle's conviction for felony harassment of a criminal justice participant, the court's instructions correctly advised the jury of the law, and Boyle fails to show juror misconduct, we affirm.

_Leach, J._

WE CONCUR:

_Spearman, C.J._          _Dwyer, J._

---

[30] State v. Briggs, 55 Wn. App. 44, 58, 776 P.2d 1347 (1989).