**FILED**
**SEPTEMBER 18, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  35053-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIEGO CONTRERAS-AVILES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Diego Contreras-Aviles appeals his conviction for second degree

assault, assigning error to the denial of his motion for mistrial and to a provision of his

judgment and sentence forfeiting the knife he used in the assault.  The trial court did not

abuse its discretion in ruling that a prospective juror's question about Mr. Contreras-

Aviles's immigration status did not require declaring a mistrial.  Any error in ordering

forfeiture, not having been raised at sentencing, was not preserved.  We affirm.

FACTS AND PROCEDURAL BACKGROUND

In the summer of 2016, a Pasco police officer was dispatched to Mr. Contreras-

Aviles's house, where he lived with two roommates.  An argument among the roommates

had led to a fight during which Mr. Contreras-Aviles had raised a large knife[1] over his head and advanced toward a roommate. Mr. Contreras-Aviles was arrested and charged with second degree assault with the special allegation that the crime was committed against a household member.

Mr. Contreras-Aviles is Spanish speaking, and an interpreter was present for the trial, including during voir dire. The last question raised by his lawyer during voir dire addressed the fact that Mr. Contreras-Aviles and most of the nonpolice witnesses in the case would be using an interpreter. Defense counsel asked, "Does anyone have any problem with someone who can't speak English, you know, either as a defendant or a witness? Does anyone have any strong feelings about someone who needs to rely on an interpreter to access their constitutional rights?" Report of Proceedings (RP) (Jury Selection)[2] at 33. None of the prospective jurors answered yes.

As the parties prepared to exercise their peremptory challenges, the trial court told the jurors about the procedure in what was expected to be a short trial. Before the peremptory challenges were exercised, prospective juror 4 raised a question and the following exchange occurred:

---

[1] Mr. Contreras-Aviles's brief refers to it as an onion knife and the State's brief refers to it as a machete. It was described at trial as having "about a foot and a half" long blade. Report of Proceedings (RP) (Jury Trial) at 38.

[2] Like the parties, we refer to two nonconsecutively numbered transcripts of proceedings as they are captioned: "Jury Selection" and "Jury Trial."

THE COURT: . . . We need one quick piece of paper before we do our next step.

Sir? Juror number 4?

JUROR 4: Yes, your Honor. I would like to know if the defendant is in this country illegally?

THE COURT: That is not a question that it is permissible to ask, sir.

RP (Jury Selection) at 34. Neither lawyer stated anything in response to juror 4's question and the court's answer. Defense counsel used a peremptory challenge to excuse juror 4.

After the jury was selected, the trial court gave a preliminary instruction and then took a morning recess. Outside the presence of the jury, defense counsel moved for a mistrial based on the "outburst from juror number 4," arguing:

I believe it was done intentionally and belligerently to poison the mind of the jury against my client. I will be incapable of refuting the claim that he made or the question that he put into the mind of the jury that was impermissible and whether or not my client is here legally. And the obvious implication is that that should have some bearing on whether he is guilty or not guilty.

RP (Jury Trial) at 13. The State agreed that the question was improper but stated the trial court handled it properly.

The court recessed before ruling on the motion, after which defense counsel repeated his position that irreparable harm had been done and the State suggested that the trial court could individually question the jurors. The court declined to question the jurors and denied the motion, explaining that it had "attempted to both point out that it wasn't a reasonable line of inquiry and tread the line between overemphasizing it and not

3

dealing with it sufficiently by indicating that it was not a question that it was appropriate to ask." RP (Jury Trial) at 16-17. It stated, "I'm concerned about the question, but . . . the question and my response to it do not lead me to the conclusion that this jury will not follow the instructions, follow only the law, and that my concluding opening remarks regarding sympathy and prejudice will be followed by the jury." RP (Jury Trial) at 17.

As contemplated by defense counsel during voir dire, the four nonpolice witnesses at trial (the two roommates, Mr. Contreras-Aviles, and a friend of Mr. Contreras-Aviles) all testified through an interpreter. At the conclusion of the evidence, the jury found Mr. Contreras-Aviles guilty as charged.

At sentencing, the prosecutor noted that because Mr. Contreras-Aviles had no criminal history, the State had not sought a deadly weapon enhancement, but "as part of this sentencing his machete will be forfeited also to the Pasco Police Department." RP (Jury Trial) at 156. Mr. Contreras-Aviles did not object, and the trial court ordered forfeiture of the knife in the judgment and sentence. It sentenced Mr. Contreras-Aviles to 6 months' confinement and 12 months' community custody. He appeals.

ANALYSIS

*Mistrial motion*

Mr. Contreras-Aviles first assigns error to the trial court's denial of his motion for a mistrial. "In a criminal proceeding, a new trial is necessitated only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will

4

be treated fairly." *State v. Johnson*, 125 Wn. App. 443, 460, 105 P.3d 85 (2005); CrR 7.5(a). More than "a possibility of prejudice" must be shown. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968).

The decision to grant or deny a motion for a mistrial is addressed "to the sound discretion of the trial court." *State v. Tigano*, 63 Wn. App. 336, 342, 818 P.2d 1369 (1991). The decision will be disturbed on appeal "only where the trial court abused its discretion or erroneously interpreted the law." *State v. Boyle*, 183 Wn. App. 1, 12, 335 P.3d 954 (2014). "An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion." *Johnson*, 125 Wn. App. at 460.

Mr. Contreras-Aviles contends that juror 4's question injected racial bias into the jury selection and the trial court's admonition, without more, was insufficient to protect his right to an impartial jury.

The United States Constitution and the Washington State Constitution "guarantee the right of an accused in all criminal prosecutions to trial by an impartial jury." *State v. Davis*, 141 Wn.2d 798, 824, 10 P.3d 977 (2000); U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 3, 22. Mr. Contreras-Aviles relies on a 1973 case, *Ham v. South Carolina*, 409 U.S. 524, 93 S. Ct. 848, 35 L. Ed. 2d 46, for the proposition that a state trial court is sometimes obligated by the due process clause of the Fourteenth Amendment to the United States Constitution to inquire into the subject of racial prejudice in voir dire. He

argues that the trial court in his case should have done more to ferret out the impact on jurors of juror 4's question.

*Ham* was a case involving purely court-conducted voir dire, with the lawyers having the opportunity only to propose questions. *Id.* at 527. The defendant, an African-American charged with possession of marijuana, contended he had been framed by police officers who were "'out to get him' because of his civil rights activities." *Id.* at 525. He proposed several questions for voir dire that were designed to identify racial prejudice. The trial court refused to ask them. In reversing his conviction, the United States Supreme Court held that the trial court was not required to put the question in any particular form or ask any particular number of questions, but given the trial court's role in the statutory framework for selecting a jury, it had a duty to afford the essential fairness required by due process. Given the facts of the case, that meant permitting Ham to have the jurors questioned on the issue of racial bias.

*Ham* has no application to this case, in which Mr. Contreras-Aviles made no request for questioning that was refused by the court. Neither the United States Supreme Court nor our Supreme Court has held that in the conduct of voir dire, a trial court has a duty, sua sponte, to inquire into racial bias. *Turner v. Murray*, 476 U.S. 28, 37 n.10, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *Davis*, 141 Wn.2d at 834. In fact, a trial court may understandably be reluctant to question jurors about the race of a party, victim, or witness, lest it leave the impression that race is somehow relevant. Accordingly, in

6

*Davis*, our Supreme Court stated, "The decision whether to raise the issue of race, considering the effect such questioning may have in unnecessarily bringing it to the attention of the jurors, is best left to defense counsel." *Id.* at 839.

Mr. Contreras-Aviles's lawyer had the opportunity to explore racial bias in his own voir dire and made the judgment not to, other than (possibly) through his questions about his non-English speaking client and other non-English speaking witnesses. We find the trial court's response to juror 4's question to have been appropriately measured: conveying that Mr. Contreras-Aviles's immigration status was irrelevant, but otherwise downplaying the issue. Mr. Contreras-Aviles did not join in the State's suggestion that the jurors be questioned further.

Mr. Contreras-Aviles demonstrates only a possibility of prejudice and in our view, a remote one. The trial court did not abuse its discretion.

*Forfeiture*

Mr. Contreras-Aviles's remaining assignment of error is to the forfeiture of his knife. He argues that the trial and sentencing record is silent on any statutory basis for the forfeiture order which, absent a basis in law, must be reversed.

The trial and sentencing record is also silent on any objection to forfeiture. RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). The rationale

7

for refusing to review an issue raised for the first time on appeal is well settled—issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

If there was no legal basis for the forfeiture, Mr. Contreras-Aviles can take other legal action to obtain its return. We decline to review the issue in this appeal.

Finally, Mr. Contreras-Aviles asks the panel to exercise its discretion to deny costs should the State substantially prevail, which it has. The State opposes the request. We defer the issue, which will be decided by our commissioner or clerk under RAP 14.2.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

 

_____
Siddoway, J.

WE CONCUR:

_____     _____
Korsmo, J.                                      Fearing, J.