**FILED**
**DECEMBER 10, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37088-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANTHONY R. GALLO, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Anthony Gallo appeals his convictions for first degree robbery

and second degree assault. As the parties agree, Mr. Gallo's assault conviction must be

vacated on double jeopardy grounds. The robbery conviction is affirmed.

FACTS

A.B. acted as a confidential informant with the Spokane Police Department. One

of her tasks was to set up a controlled drug buy with Anthony Gallo. A.B. was given $500

in prerecorded bills and instructed to purchase heroin.

The interaction with Mr. Gallo did not go as planned. While under police surveillance, A.B. walked to Mr. Gallo's car and got inside. Shortly thereafter, Mr. Gallo grabbed A.B.'s money and handed her an empty plastic bag. Mr. Gallo told A.B. he knew she was working with police and ordered her to get out of the car. A.B. did not want to leave without completing the transaction. Mr. Gallo produced a handgun and pushed it against A.B.'s face.

During the struggle with Mr. Gallo, A.B. placed a surreptitious call to her law enforcement contact. The officer could hear rusting sounds, consistent with some sort of struggle. The officer also heard a female voice yelling "'stop.'" Report of Proceedings (RP) (July 30, 2019) at 155.

A.B. left the car and made another call to law enforcement. She was "crying hysterically" and difficult to understand. *Id*. at 155-56. During the call, A.B. reported what had happened, including the fact that Mr. Gallo had placed a gun to her head. A.B. was still crying when officers located her in person. At that point, A.B.'s makeup was smeared and a bruise was forming on her cheek.

The police began searching for Mr. Gallo. After several hours, officers spotted his car and initiated pursuit. At one point, officers could see a car door open and shut, but the car kept moving. Officers lost sight of the car a few times during the chase. Eventually the car stopped after being forced down an embankment. Mr. Gallo was arrested.

2

Police recovered the prerecorded bills in Mr. Gallo's possession. They also found two gun holsters in the trunk. They did not locate any firearms.

The State charged Mr. Gallo with one count of first degree robbery and one count of second degree assault. A charge of possession of a controlled substance was voluntarily dismissed by the State on the eve of trial.

The case proceeded to a jury trial. When A.B. testified, she claimed to have trouble remembering the incident and initially denied Mr. Gallo had put a gun to her head. She testified the bruise on her face was the result of an unrelated domestic violence incident. The prosecutor asked several leading questions, referring A.B. back to the statements she had made to police. The court sustained defense counsel's objections to the questions; nevertheless, the prosecutor persisted. A.B. agreed with the prosecutor that she had told police Mr. Gallo robbed her at gunpoint. But she claimed those prior statements were untrue.

Mr. Gallo's defense was that he had not robbed or assaulted A.B.; instead, he had merely recouped money from an outstanding drug debt. During cross-examination of A.B., defense counsel attempted to establish A.B. owed Mr. Gallo money for past drug transactions.

> Q:  Had you been fronted any drugs by Mr. Gallo in the past?
> A:  I don't know. Maybe.
> Q:  Did you owe him some money?
> A:  I'm sure.

RP (July 29, 2019) at 94.

3

A.B. was recalled to the stand the day after her original testimony. She explained she had voluntarily contacted law enforcement the previous night because she wanted to "make things right." RP (July 30, 2019) at 167. A.B. confessed that her previous testimony had been inaccurate. She explained she had been scared and nervous. A.B. testified that Mr. Gallo did in fact push a gun against her face when he told her to get out of the car. She also explained the bruise on her face was caused by the gun, not a domestic violence incident. The defense cross-examined A.B. about her willingness to lie under oath.

Evidence closed without a defense case-in-chief and the parties presented summation. In rebuttal argument, the prosecutor responded to Mr. Gallo's drug debt theory, stating, "[A.B.] never said on the stand that she had a drug debt to Mr. Gallo. She was asked about that. That's not what she said on the stand." *Id*. at 205-06. Mr. Gallo did not object.

The jury convicted Mr. Gallo as charged. The trial court imposed a mid-range sentence of 126 months' confinement. The court's judgment and sentence reflects convictions for both first degree robbery and second degree assault. Mr. Gallo appeals.

No. 37088-7-III
*State v. Gallo*

ANALYSIS

*Double jeopardy*

As the parties agree, double jeopardy[1] prohibits Mr. Gallo from being convicted of both first degree robbery and second degree assault. The evidence at trial was that Mr. Gallo assaulted A.B. in order to facilitate the crime of robbery. Given this circumstance, the charges of first degree robbery and second degree assault merged and double jeopardy prohibits convictions on both counts. *State v. Freeman*, 153 Wn.2d 765, 779-80, 108 P.3d 753 (2005). The applicable remedy is to vacate the lesser crime of assault and remand for resentencing. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532, 242 P.3d 866 (2010).

*Sufficiency of the evidence*

Mr. Gallo challenges his convictions, arguing there was insufficient evidence to prove he was armed with a firearm. According to Mr. Gallo, A.B.'s testimony about the firearm was patently not credible and therefore insufficient to justify a conviction. This argument is foreclosed by the applicable standard of review.

When faced with a sufficiency challenge, we view the evidence in the light most favorable to the State. *State v. Boyle*, 183 Wn. App. 1, 6, 335 P.3d 954 (2014). Our analysis does not permit credibility determinations. *Id*. A jury is entitled to accept a

---

[1] U.S. CONST. amend. V; WASH. CONST. art I, § 9.

5

witness's testimony, regardless of impeachment. Mr. Gallo cites no authority otherwise.

A.B. testified Mr. Gallo was armed with a firearm. Technically, that was all the State needed to justify the jury's verdict.[2] Nevertheless, A.B.'s testimony was corroborated by the bruising to her cheek and her ability to describe the gun in detail. Although police never found any firearms, they did find gun holsters. Given the time that lapsed between the offense and Mr. Gallo's arrest, it was completely possible for Mr. Gallo to have discarded the gun before he was captured by police.

Mr. Gallo's criticisms of A.B.'s credibility are factual arguments that are appropriate for a jury, but not the Court of Appeals. We reject Mr. Gallo's sufficiency challenge.

*Prosecutorial misconduct*

Mr. Gallo makes several claims of prosecutorial misconduct, some of which have been preserved, while others have not. Regardless of whether a claim of misconduct has been preserved, the defense must show both misconduct and prejudice. *State v. Echevarria*, 71 Wn. App. 595, 597, 860 P.2d 420 (1993). In the context of an unpreserved claim of misconduct, the defense must also show the prosecutor's actions were so flagrant or ill-intentioned that they could not have been remedied by a curative instruction. *Id.*

---

[2] Mr. Gallo does not argue the evidence was insufficient to prove the firearm was a real gun as opposed to a replica. Regardless, the circumstances in which the device was used are sufficient for the jury to find the device was a real gun. *State v. Tasker*, 193 Wn. App. 575, 595, 373 P.3d 310 (2016).

None of Mr. Gallo's misconduct allegations meet the standard for reversal.

### *Leading questions*

Mr. Gallo first complains the prosecutor improperly engaged in repeated leading questions. Leading questions are generally inappropriate during direct examination. *See* ER 611(c). While a leading question may be used to address background matters or summarize relatively unimportant information, it is improper for counsel to use leading questions on direct examination in order to convey material substantive facts. *See* 5A KARL B. TEGLUND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 612.10 at 577-78 (6th ed. 2016).

We agree with Mr. Gallo that the prosecutor should not have engaged in repetitive leading questions. The trial court did not grant the prosecutor's request to treat A.B. as a hostile witness. As such, it was improper for the prosecutor to ask leading questions on issues material to Mr. Gallo's guilt.

While the prosecutor's questions were improper, they did not suggest any new information to the jury. The prosecutor's leading questions largely pertained to inconsistencies between A.B.'s original trial testimony and her previous statements to police. A.B. admitted to the inconsistencies. The substance of the inconsistencies was also elicited from the officers who testified at trial. In addition, A.B. later clarified that her original statements to police were correct. There is no indication that A.B.'s decision to come clean and correct her testimony was prompted by the prosecutor's leading questions

or any other undue influence. A.B. was explicit that her decision to come forward the day after her original testimony was hers and hers alone.

Not every trial impropriety warrants reversal. The key is prejudice. As stated, the danger of leading questions is that they will suggest new information to the jury. That did not happen here. Because the prosecutor's use of leading questions did not endanger the fairness of Mr. Gallo's trial, we will not disturb the jury's verdict on appeal.

*Argument during summation*

Mr. Gallo argues the prosecutor made two improper statements during summation. First, he claims the prosecutor improperly referred to the crime as a "drug rip," RP (July 20, 2019) at 199, in violation of the court's instructions to jurors. Second, he argues the prosecutor misstated A.B.'s testimony on whether she owed Mr. Gallo money. We find no misconduct.

It was not wrong for the prosecutor to refer to the facts of the case as a drug rip. The court's instructions appropriately advised the jury that evidence of drug activity was only relevant for the limited purpose of "establishing the defendant and the complaining witness were together on the night in question." CP at 38. The prosecutor did not argue otherwise. The prosecutor did not attempt to reference drugs in order to assail Mr. Gallo's character. Rather, the prosecutor was simply referencing the uncontested fact that Mr. Gallo and A.B. were together because of drugs. The State's position was that a robbery related to drugs occurred. The defense claim was that a payment of a debt related to drugs

8

occurred. The State's reference to what happened as a drug rip was just a short-handed way of explaining its uncontested theory of the case. There was no improper argument.

We also disagree that the prosecutor mischaracterized A.B.'s testimony. When asked if she owed Mr. Gallo money, A.B. said "I'm sure." RP (July 29, 2019) at 94. A.B. was not specifically asked if she owed Mr. Gallo *drug* money and she never explicitly said as much. One might infer A.B. was talking about drugs, but inferences from facts are not the same as the facts themselves. It is the role of an attorney to argue inferences. The transcript shows it was technically accurate for the prosecutor to claim A.B. "never said on the stand that she had a drug debt to Mr. Gallo." RP (July 30, 2019) at 205. The jury— which had as much access to A.B.'s testimony as the prosecutor—was free to disagree with the prosecutor's characterization of the testimony if they found it unwarranted. We will not second guess the jury's verdict by questioning whether it might have been swayed by an unpersuasive factual inference.

*United States Marshal Service violent offender task force*

Mr. Gallo's final misconduct claim stems from the testimony of various officers who stated they were part of a United States Marshal Service violent offender task force. Mr. Gallo claims this testimony improperly suggested he was a violent offender, as prohibited by ER 404(b). We disagree with this assessment.

In explaining their backgrounds, the officers involved in Mr. Gallo's case testified they were part of two units. One was the Spokane Police Department's "Patrol Anti-

9

Crime Team" (PACT). RP (July 29, 2019) at 50. The other was the United States Marshal Service violent offender task force. Trial testimony made clear that Mr. Gallo's investigation fell under the officers' PACT work, not the violent offender task force. *See id.* ("Q: And do you recall running a specific operation or helping run a specific operation with PACT on December 10th, 2018? A: That's correct, yes."). Nevertheless, one of the officers briefly referenced the violent offender task force when describing how he became involved in Mr. Gallo's case. The court sustained an objection to this reference before it could be explained. There was never any explicit testimony that Mr. Gallo was being investigated as part of the officer's work on the violent offender task force, as opposed to the PACT. We perceive no danger that the jury made this connection.

The various references to the violent offender task force were irrelevant and objections to the testimony were appropriately sustained. But because the task force information was irrelevant, it posed no danger of prejudice to Mr. Gallo's case. There is no basis for reversal.

*Cumulative error*

Mr. Gallo argues that the cumulative errors in his case require reversal. We disagree. Mr. Gallo's case was not infected by multiple errors, let alone a combination of errors that jeopardized his right to a fair trial. The jury's adjudication must be affirmed.

CONCLUSION

Mr. Gallo's conviction for first degree robbery is affirmed. The conviction for

second degree assault is vacated and we remand for resentencing.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.