# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

     v.

TODD KYLE WALKER,

                Appellant.

No. 82059-1-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — Todd Walker appeals his conviction for felony harassment. He contends the trial court erred by not dismissing the charge based on outrageous government conduct, the to-convict instruction omitted an essential element of the charged crime, and the evidence was insufficient to support the guilty verdict. We affirm.

## BACKGROUND

### Facts

The following facts are drawn from the trial court's findings of fact entered on Walker's motion to dismiss. The trial court's findings are unchallenged and, thus, are verities on appeal. State v. Bowman, 14 Wn. App. 2d 562, 567, 472 P.3d 332 (2020).

On November 2, 2018, Elma Police Officer Josh Goffena responded to a call in the City of Elma involving a suspect later identified as Walker. Walker was

Citations and pin cites are based on the Westlaw online version of the cited material.

highly intoxicated and had already been detained by other officers at the time of initial contact by Goffena. Walker was subsequently arrested and placed in the back of Goffena's police vehicle.[1] The vehicle had a plastic back seat and a Plexiglas and metal partition separating the driving area from the passenger area.

While Goffena was transporting Walker to the Grays Harbor County Jail, Walker banged his head multiple times against the Plexiglas and metal partition separating the back seat from the front seat. Goffena verbally told Walker to stop banging his head against the partition, to no avail. From his vantage point driving the vehicle, Goffena could not tell the extent of the injuries suffered by Walker. Goffena pulled to the side of Highway 12 to check on Walker.

As he came around the back of his patrol car to address Walker, Goffena took hold of his oleoresin capsicum spray (pepper spray). When Goffena opened the back door, providing access to Walker, Walker stuck his foot out facing toward Goffena, as if to flee, kick, or block the door from closing.

Walker was bleeding heavily from his head and was not cooperative. Goffena verbally ordered Walker to get back into the car. The verbal commands were ineffective as Walker remained postured at the car door. He continued to be verbally abusive and physically uncooperative. Given Walker's behavior and intoxicated state, Goffena had two options. He could do nothing, or he could engage in some use of force. Higher levels of force included the use of a baton to leverage, or using his own body to physically force compliance from Walker.

---

[1] Walker was arrested for violating a no-contact order.

2

But these were not good options for Goffena due to the amount of blood and the close quarters in the back of the patrol vehicle. Therefore, Goffena used the next available level of force and sprayed pepper spray at Walker after giving him several warnings that he was about to be sprayed.

Goffena's decision to use pepper spray had the desired effect in that Walker ceased beating his head against the partition and ceased causing further injuries to himself. Goffena drove to the county jail faster than normal, using his lights and sirens, and Walker was provided medical treatment to abate the effects of pepper spray as soon as he arrived.

Procedure

The State subsequently charged Walker with felony harassment for threats he made against Goffena on the way to the county jail. Specifically, according to Goffena's later testimony, on the way to the jail after he pepper sprayed Walker, Goffena saw Walker in the rearview mirror "lift his head up and look straight into [the] direction of the driver's seat" and heard him say "five times, not repetitively, not like super quick . . . , 'I'm going to find you and I will kill you.' "

Before trial, Walker moved to dismiss the felony harassment charge, arguing that Goffena's use of pepper spray on Walker constituted outrageous government conduct that was so shocking as to violate fundamental fairness. He contended that Goffena's use of pepper spray "did little to diffuse the situation" and instead "stoked the fire to what later turned into the alleged harassment threat." He also argued that Goffena's actions "amounted to . . . pouring salt into an open wound which provoked [Walker]" and constituted excessive force that

3

"directly contributed to [Walker]'s change from argumentative to threatening."

Thus, he argued, dismissal was warranted.

The trial court denied Walker's motion, and a jury later found Walker guilty

as charged. Walker appeals.

DISCUSSION

*Motion to Dismiss*

Walker contends the trial court erred by denying his motion to dismiss.

We disagree.

"A trial court may dismiss the charges against a defendant when the State

is found to have engaged in outrageous misconduct in violation of a defendant's

due process right to fundamental fairness." State v. Solomon, 3 Wn. App. 2d

895, 897, 419 P.3d 436 (2018). "A due process claim based on outrageous

conduct requires more than a mere demonstration of flagrant police conduct."

State v. Lively, 130 Wn.2d 1, 20, 921 P.2d 1035 (1996). Instead, the conduct

"must be so shocking that it violates fundamental fairness." Id. at 19.

Additionally, "[p]ublic policy allows for some . . . violation of criminal laws by the

police in order to detect and eliminate criminal activity." Id. at 20. Accordingly,

"[d]ismissal is appropriate only in the most egregious of cases, such as where . . .

government agents direct a crime from beginning to end or a crime is fabricated

for the sole purpose of obtaining a conviction and not to protect the public from

criminal behavior." State v. Athan, 160 Wn.2d 354, 377, 158 P.3d 27 (2007).

"We review a trial court's order on a motion to dismiss on the basis of

outrageous governmental misconduct 'under an abuse of discretion standard.' "

Solomon, 3 Wn. App. 2d at 910 (quoting Athan, 160 Wn.2d at 375). " 'Abuse of discretion requires the trial court's decision to be manifestly unreasonable or based on untenable grounds or untenable reasons.' " Id. (quoting Athan, 160 Wn.2d at 375-76).

The trial court did not abuse its discretion by denying Walker's motion to dismiss. Contrary to Walker's suggestion that he "could not hurt anyone" given he was handcuffed in the back seat of Goffena's police vehicle, the trial court made an unchallenged finding that Walker "was actively causing self-harm" by banging his head and face against the partition in the vehicle. It was not outrageous for Goffena to stop on the side of the road to check on Walker after he "verbally told [Walker] to stop banging his head against the partition to no avail."

It also was not outrageous for Goffena to deploy pepper spray given that, according to the trial court's unchallenged findings: (1) when Goffena opened the back door, Walker "stuck his foot out facing toward [Goffena], as if to flee, kick, or block the door from closing," (2) Goffena verbally ordered Walker to get back into the car but the verbal commands were ineffective as Walker "remained postured at the car door," (3) Walker was "bleeding heavily from his head" and Goffena was not wearing gloves to protect himself from any blood, (4) using a baton or using his own body to physically force compliance from Walker were not good options given the amount of blood and the close quarters in the back of Goffena's police vehicle, (5) the interaction took place on the side of a highway, and (6) before using the pepper spray, Goffena gave Walker "several warnings that

he was about to be sprayed." Under these circumstances, Goffena's actions were not so shocking as to violate fundamental fairness, and the trial court did not err by denying Walker's motion to dismiss.

Walker chiefly relies on Lively to contend that Goffena's actions constituted outrageous conduct warranting dismissal. But Lively is distinguishable on its facts. There, the defendant, Amy Lively, was a recovering addict who had been attending Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings. Lively, 130 Wn.2d at 6. She was charged with delivery of a controlled substance after delivering cocaine to undercover officers in transactions arranged by an informant who had attended the AA/NA meetings, with the approval of detectives, "to identify repeat drug addicts continuing to sell illegal drugs." Id.

In reversing Lively's conviction based on outrageous government conduct, our Supreme Court observed that "the informant's attendance at AA/NA meetings could best be described as 'trolling for targets' " and the informant "did not infiltrate an ongoing criminal activity, but established a relationship with [Lively] for the purpose of instigating a crime." Id. at 22-23. Additionally, the trial court had found that Lively attended treatment in an effort to eliminate her drug problem; the informant lived with Lively prior to the cocaine deliveries; Lively never sought out anyone to sell drugs to and instead it was the informant who made numerous requests that Lively purchase drugs; after the deliveries, the informant asked Lively to marry him; and without apparent predisposition, Lively was induced by the informant to commit the crime of delivery. Id. at 25. The

Supreme Court stated that "[t]hese findings clearly support the conclusion that [Lively]'s reluctance to commit a crime was purposely overcome by the State. Id.

The court also determined that the informant's conduct was "so closely related to [Lively's] actions . . . that the informant controlled the criminal activity from start to finish." Id. at 26. Specifically, the informant developed a relationship with Lively that resulted in her becoming emotionally reliant on him; because of her emotional dependence, Lively agreed to deliver cocaine to the informant's " 'close friend' "; and Lively used the informant's car to obtain cocaine at times arranged by the informant. Id.

Finally, the Lively court concluded that the government's conduct demonstrated "a greater interest in creating crimes to prosecute than in protecting the public from further criminal behavior," and given the public policy preference for addiction treatment and the "life line" that programs like AA/NA provide to citizens recovering from substance abuse, "[t]he courts of this State cannot countenance the conduct which occurred in this case." Id. at 26-27.

In the instant case, the record does not reflect anything near the level of purposeful instigation by the State that was present in Lively. The trial court's findings do not support a conclusion that Goffena pepper sprayed Walker to instigate threats from Walker; that Walker was reluctant to make threats—much less that his reluctance was purposely overcome by Goffena's actions; or that Goffena effectively controlled Walker's criminal activity from start to finish. And although Walker attempts to analogize his case to Lively by arguing that he "would not have reacted the way he did" if Goffena had not sprayed him with

7

pepper spray, we find his attempt unconvincing. Walker's reliance on Lively is misplaced. Cf. id. at 21 ("Each case must be resolved on its own unique set of facts.").

*To-Convict Instruction*

Walker argues that reversal is required because the to-convict instruction omitted an essential element of the crime, i.e., that Walker had the present and future ability to carry out his threat. We disagree.

Walker's argument raises an issue of statutory interpretation, which we review de novo. State v. Boyle, 183 Wn. App. 1, 10, 335 P.3d 954 (2014). "When construing a statute, we primarily seek to ascertain and carry out the legislature's intent." Id. at 10-11. "Statutory interpretation begins with the statute's plain meaning, which we discern from the ordinary meaning of its language in the context of the whole statute, related statutory provisions, and the statutory scheme as a whole." Id. at 11. "If the statute's meaning is unambiguous, our inquiry ends [t]here." Id.

RCW 9A.46.020 provides, in relevant part, "A person is guilty of harassment if . . . [w]ithout lawful authority, the person knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened . . . and . . . [t]he person by words or conduct places the person threatened in reasonable fear that the threat will be carried out." The crime of harassment is ordinarily a gross misdemeanor; however, it is elevated to a felony if the defendant "harasses a criminal justice participant who is performing his or her official duties at the time the threat is made." RCW 9A.46.020(2)(b)(iii). For

8

purposes of felony harassment of a criminal justice participant, the statute specifies that "the fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances," and "[t]hreatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat."  RCW 9A.46.020(2)(b).

Walker contends that this final sentence of RCW 9A.46.020(2)(b) means that threatening words constitute harassment *only if* Walker had the present and future ability to carry out his threat.  We rejected this argument in Boyle, and we do so again today.

As we explained in Boyle, the final sentence of section (2)(b) of the statute is phrased as an exception; it is not an element.  Boyle, 183 Wn. App. at 11. Consistent with the statute's requirements that the threat place the person threatened "in reasonable fear that the threat will be carried out" and that the fear "be a fear that a reasonable criminal justice participant would have under all the circumstances," RCW 9A.46.020(1)(b), (2)(b), the statute also specifies, as we explained in Boyle, "that threatening words are not harassment if it is apparent to the criminal justice participant that (1) the speaker does not have the present ability to carry out the threat and (2) the speaker does not have the future ability to carry out the threat."  183 Wn. App. at 11.

Walker essentially asks us to take an exception and read it inversely to suggest the legislature intended the mirror opposite to be the mandatory minimum requirement.  We decline to do so.  Cf. Wash. Fed. v. Gentry, 179 Wn.

9

App. 470, 483-84, 319 P.3d 823 (2014) ("We . . . decline to add the inverse to the statute when the Legislature did not expressly do so. . . . [Such a reading] is grounded in a logical fallacy. 'The proposition that 'A implies B' is not the equivalent of 'non-A implies non-B,' and neither proposition follows logically from the other.' " (quoting Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 703 n.20 (2d Cir. 1980))). Instead, we conclude, as we did in Boyle, that the interpretation Walker advances is inconsistent with the plain meaning of RCW 9A.46.020.

In short, the plain meaning of RCW 9A.46.020 does not, as Walker asserts, require the State to prove that Walker had the present and future ability to carry out his threats. The court's to-convict instruction correctly stated the law,[2] and thus, reversal is not required.

---

[2] The court instructed the jury as follows:

To convict the Defendant of the crime of Felony Harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about November 2, 2018, the Defendant knowingly threatened to cause bodily injury immediately or in the future to Josh Goffena;
(2) That Josh Goffena was a criminal justice participant who was performing his official duties at the time the threat was made;
(3) That the words or conduct of the Defendant placed Josh Goffena in reasonable fear that the threat would be carried out;
(4) That the fear from the threat was a fear that a reasonable criminal justice participant would have under all the circumstances;
(5) That the Defendant acted without lawful authority; and
(6) That this act occurred in the State of Washington.

Walker disagrees and argues that the rule of lenity requires us to construe RCW 9A.46.020 in his favor. Under the rule of lenity, we strictly construe a criminal statute in favor of the defendant when the statute is "susceptible to more than one reasonable, but irreconcilable, interpretation." State v. Oakley, 117 Wn. App. 730, 734, 72 P.3d 1114 (2003). The rule of lenity does not apply here, where, for reasons already discussed, Walker's proffered interpretation of RCW 9A.46.020 is not reasonable. Therefore, Walker's argument is unpersuasive.

Walker next contends that our decision in Boyle was misguided because it relied on the "absurd results" canon of statutory construction, under which "we 'will avoid [a] literal reading of a statute which would result in unlikely, absurd, or strained consequences.' " Five Corners Family Farmers v. State, 173 Wn.2d 296, 311, 268 P.3d 892 (2011) (alteration in original) (quoting Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)). But in Boyle, we merely observed, *after* explaining that the interpretation now being proffered by Walker was inconsistent with the statute's plain meaning, that the proffered interpretation would also produce absurd results. See 183 Wn. App. at 11-12. Our analysis did not and does not rest on the absurd results canon. Thus, Walker's contention fails.

---

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

*Sufficiency of the Evidence*

Walker argues that the evidence was insufficient to support the jury's guilty verdict. We disagree.

To satisfy the Fourteenth Amendment's due process guarantee, the State "bears the burden of proving every element of every crime beyond a reasonable doubt." State v. Chacon, 192 Wn.2d 545, 549, 431 P.3d 477 (2018); U.S. CONST. amend. XIV. When a defendant challenges the sufficiency of the evidence presented to meet this burden, "he or she admits the truth of all of the State's evidence." State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). "In such cases, appellate courts view the evidence in the light most favorable to the State, drawing reasonable inferences in the State's favor." Id. at 265-66. "Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." Id. at 265.

Here, Walker's sufficiency argument relies entirely on his assertion that the State was required to prove that Walker had the present and future ability to carry out his threats against Goffena. But as discussed, the State was not required to so prove. Furthermore, having reviewed the trial transcript, we conclude that the evidence, viewed in the light most favorable to the State, was sufficient to find the elements of felony harassment satisfied beyond a

No. 82059-1-I/13

reasonable doubt.  We affirm.

_____Coburn, J._____

WE CONCUR:

_____Dwyer, J._____    _____Appelwick, J._____

13