IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>     Respondent,<br><br>   v.<br><br>GHASSAN A. SHAKIR,<br><br>     Appellant. | No. 84717-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — A jury convicted Ghassan Shakir, then a rideshare driver, of kidnapping and of committing indecent liberties against two female passengers. Shakir now claims that the State engaged in misconduct, that evidentiary errors occurred, and that his convictions violate his double jeopardy rights. Separately, Shakir asserts additional errors, including ineffective assistance of counsel. We remand this matter to the trial court with instructions to strike Shakir's victim penalty assessment (VPA) and DNA collection fee. Otherwise, we affirm.

## I.  BACKGROUND

Four women (K.D., A.A., K.P., and C.A.) accused Shakir of sexually assaulting them in 2019 while he was on duty as a rideshare driver. The State charged Shakir with the following six crimes:

1. Indecent liberties by forcible compulsion, committed against K.D.;

2. Kidnapping in the first degree with intent to commit the felony of indecent

liberties and with the aggravating factor of sexual motivation, against K.D.;

3. Rape in the second degree, committed against A.A.;

4. Indecent liberties by forcible compulsion, committed against K.P.;

5. Kidnapping in the first degree with intent to commit the felony of indecent liberties and with the aggravating factor of sexual motivation, against K.P.; and

6. Rape in the third degree, committed against C.A.

A 14 day jury trial began in August 2022. The jury convicted Shakir only of both kidnapping counts and both indecent liberties counts. For both kidnapping counts, the jury found the aggravating factor of sexual motivation. The court imposed an indeterminate sentence of 226 months to life.

Shakir now timely appeals. Shakir himself separately filed two statements of additional grounds (SAG).

## II.     ANALYSIS

### A.     Prosecutorial Misconduct

Shakir claims the State committed prosecutorial misconduct in its rebuttal closing argument when asserting he would be the "'unluckiest man in the world'" for four similar women to "'falsely accuse'" him. We disagree.

A prosecutor serves "as the representative of the people" and "[d]efendants are among the people the prosecutor represents." State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). Thus, the State "owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated." Id.; CONST. art. I, §

22; U.S. CONST. AMEND. VI.

"In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We gauge whether a defendant has met this burden within "'the context of the entire record and the circumstances at trial.'" State v. Koeller, 15 Wn. App. 2d 245, 260, 477 P.3d 61 (2020) (quoting State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). "We review allegations of prosecutorial misconduct under an abuse of discretion standard." State v. Azevedo, 31 Wn. App. 2d 70, 78, 547 P.3d 287 (2024). "The trial judge is generally in the best position to determine whether the prosecutor's actions were improper and whether, under the circumstances, they were prejudicial." State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010).

In its rebuttal closing argument, the State stated:

> [PROSECUTOR:] [A]fter . . . the defense closing argument . . . the conclusion that [Shakir's counsel] would have you draw with the issues that he has raised is essentially that *Mr. Ghassan Shakir is the unluckiest man in the world*, right. He is just there in the Seattle area trying to help four women –
>
> [SHAKIR'S COUNSEL]: Your Honor, I object. This is impermissible. This is impermissible. It reverses the burden.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: He is just driving around the Seattle area and *four remarkably similar-looking women around the same age with the same stature, with almost the same hairstyle* or whether he tries to help, somehow he ends up in areas that are known to him, but he gets lost in those near his workplace or places that he has visited before in Renton, for example. And they all somehow *falsely accuse* him of sexual assault –
>
> [SHAKIR'S COUNSEL]: Wow.

3

[PROSECUTOR]: -- without knowing each other. That is just simply not what the evidence in this case (unintelligible).

(Emphasis added).

At oral argument, Shakir's counsel clarified the scope of his prosecutorial misconduct claim. His counsel asserted that he was not objecting to the State noting the victims' physical similarities and that the "'unluckiest person in the world' [comment] standing alone is not prejudicial misconduct." Wash. Ct. of Appeals oral argument, State v. Shakir, No. 84717-1-I, (Jan. 9, 2025), at 6 min., 59 sec. through 7 min. 34 sec. & at 3 min., 49 sec. through 4 min., 11 sec. video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2025011215. Instead, "it's the 'falsely accusing' [comment] combined . . . with 'unluckiest person,'" which constituted error because "basically what the prosecutor said is in order to acquit you have to find that the victims are lying." Id. at 3 min., 49 sec. through 4 min., 11 sec. In this way, Shakir argues that the State undermined the presumption of innocence and lowered or shifted the burden of proof.

It is true that the State may not shift the burden of proof to the defendant or otherwise undermine their presumption of innocence. State v. Miles, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). Even so, "[a]s an advocate, the prosecuting attorney is entitled to make a fair response to the arguments of defense counsel." State v. Brown, 132 Wn.2d 529, 566, 940 P.2d 546 (1997). We hold that it was not an abuse of discretion for the court to overrule Shakir's objection because each of the State's comments, individually or taken together, were a proper response to

4

his closing argument.

Shakir asserted in his closing argument that the victims or complaining witnesses' memories were unreliable, based in part on their apparent intoxication. Shakir's counsel also asked the jury to recall, when they are "getting into cabs or Ubers or Lyfts . . . what percentage [of drivers] are Middle Eastern? I think that's an issue insofar as the identification issues that confront these four young ladies and you, frankly, evaluating their identification." In turn, Shakir repeatedly argued this matter presented a case of mistaken identity.

In that context, the State's "unluckiest man" comment essentially is an appeal to the jury's common sense, or to the rough laws of probabilities, that it is unlikely that each woman would have the same type of memory lapse—based on intoxication and the inability to tell persons of different ethnicity apart—and accuse by mere coincidence the same person of sexual assault. State v. Welker, 37 Wn. App. 628, 638 n.2, 683 P.2d 1110 (1984) ("The jury is usually told it may rely upon common sense and the 'common experience of mankind.'"). In this way, we hold the State's "unluckiest man" comment was a fair response to Shakir's closing argument that the women simply had an unfortunate identical failure of memory. Brown, 132 Wn.2d at 566.

Turning to the State's "falsely accuse" comment,[1] Shakir strongly suggested

---

[1] At oral argument, counsel rhetorically asked, "What does ['falsely accused him'] mean? 'False.' They lied. It wasn't true. Ok, they didn't say they made a mistake or they could have made a mistake." Wash. Ct. of Appeals oral argument, supra at 6 min., 6 sec. through 6 min., 17 sec. For purposes this argument, we will assume "falsely accuse" means an intentional falsehood, though that is not its only meaning. BLACK'S LAW DICTIONARY, 742 (12th ed. 2024) ("[w]hat is false can be so by intent, by accident, or by mistake").

in his closing argument that the victims or complaining witnesses were lying, or otherwise questioned the truthfulness of the allegations. For example, Shakir asserted that "intentional falses, unintentional falses, and outright lies, they all look the same in court." And he argued "[e]ither [A.A.] intentionally didn't tell the truth or maybe she was so intoxicated that it didn't dawn on her that she just had a cigarette. Don't know which." Further, he described K.D.'s account of events as having "no basis[] [i]n fact, none. I didn't bring this up to her because I didn't want to embarrass her." Shakir characterized K.D.'s testimony multiple times as "false," and a "fantasy." In other words, Shakir's closing argument repeatedly urged the jury to conclude the victim's testimony was "false" and perhaps intentionally so.

We hold it was not an abuse of discretion for the court to overrule Shakir's objection because the State's "falsely accuse" comment was a fair response to Shakir's closing argument, which directly accused the victims or complaining witnesses of effectively intentionally fabricating the evidence. Brown, 132 Wn.2d at 566. Again, the State's argument essentially asked the jury to use their common sense to evaluate whether it is likely that all four complainants had the same "fantasy."

Moreover, we must still consider this assignment of error in the context of the entire record and the circumstances at trial. Koeller, 15 Wn. App. 2d at 260. "In the context of closing arguments, the prosecuting attorney has 'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006),

overruled on other grounds by State v. W.R., 181 Wn.2d 757, 760, 336 P.3d 1134 (2014)). "It is not misconduct for a prosecutor to argue that the evidence does not support the defense theory." State v. Graham, 59 Wn. App. 418, 429, 798 P.2d 314 (1990).

Here, the State went on to tie and contrast its comments on the implausibility of Shakir's theories to the entirety of the evidence presented at trial. Specifically, the State argued that "[e]ven if [the jury] want to disregard completely the in-court identification of each of these witnesses and their photomontages,[2] the other evidence supports that this person is Ghassan Shakir." The State then discussed "all of the video[3] . . . the geo location data"[4] and "[Shakir's] own admissions." The State also acknowledged the lack of conclusive DNA evidence, but argued that a forensic scientist and detective had testified such evidence is not the "end-all, be-all" before discussing other evidence such as the "handcuffs that [were] found in Mr. Shakir's car."[5] Thus, viewing the State's comments in context of the entire argument, as we must, it was not an abuse of discretion to conclude that the State's comments invited the jury to weigh the entirety of the evidence on one side to the likelihood of intentional falsehoods or mere coincidence on the other. Koeller, 15 Wn. App. 2d at 260.

---

[2] The State was referring to the fact that all four complainants provided in-court identifications of Shakir at trial.

[3] The State was referring to various surveillance videos which, for example, show K.D. entering Shakir's car and the vehicle's subsequent inculpatory route.

[4] The State was referring to testimony and inculpatory evidence on geo-location, Google Maps, and rideshare app data detailing Shakir's whereabouts in relation to the victims.

[5] The State was referring to handcuffs found in a bag in Shakir's vehicle, which were engraved with the phrases "'50 shades of gray'" and "'you are mine.'"

Finally, Shakir also argues the State's comments violated a court order, namely jury instruction 3, which states jurors "'must decide each count separately'" and their "'verdict on one count should not control your verdict on any other count.'" In support, Shakir cites to Fisher. There, the "court expressly conditioned the admission of evidence of physical abuse on defense counsel's making an issue of [the victim's] delayed reporting." 165 Wn.2d at 747. The defense did not make an issue of delayed reporting, but the State nonetheless invoked the prohibited evidence in violation of this ruling. Id.

Indeed, the State may not present evidence in violation of a court order, instructions, or ruling in limine. Gregory, 158 Wn.2d at 864-67 ("the State made the motion in limine and then blatantly violated the resulting order"). But here, the court issued only general instructions to consider each count separately, that the State has the burden of providing each element beyond a reasonable doubt, and that the "lawyers' statements are not evidence." Nothing in the State's closing argument undermined those instructions. The State's comments did not expressly or implicitly instruct the jury to conflate the complaining witness' accusations, in contravention of the instructions or court's findings. And the State ended its argument with a reminder that "[t]here is no question at all that [Shakir] do[es] not have a burden of proof" and the "State has the burden of proof beyond a reasonable doubt for each element." Thus, we hold the State's challenged comments did not violate a court order as Shakir argues.

In sum, we hold that Shakir has not carried his burden to show the State's comments were improper. Emery, 174 Wn.2d at 756. We need not reach the

prejudice prong.[6]

B.      Recorded Recollection

Shakir next argues the court abused its discretion by admitting under ER 803(a)(5) a recording of K.D.'s 2019 statements to a detective.  We disagree.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  ER 801(c).  "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute."  ER 802.  Relevant here is the "Recorded Recollection" hearsay exception.  ER 803(a)(5).  Under this exception:

> Admission is proper when the following factors are met: (1) the record pertains to a matter about which the witness once had knowledge; (2) the witness has an insufficient recollection of the matter to provide truthful and accurate trial testimony; (3) the record was made or adopted by the witness when the matter was fresh in the witness' memory; and (4) the record reflects the witness' prior knowledge accurately.

State v. Alvarado, 89 Wn. App. 543, 548, 949 P.2d 831 (1998).  Shakir only disputes the first and third prong, largely conflating the two in arguing that K.D. "never" had either knowledge or a fresh memory of the events.

"The admission of statements under ER 803(a)(5) is reviewed for an abuse of discretion."  Id.  While this standard "provides great deference to the trial court's evidentiary rulings, it does not immunize them."  State v. Broussard, 25 Wn. App. 2d 781, 789, 525 P.3d 615 (2023).  "A court abuses its discretion when its decision

---

[6] Shakir makes a single passing reference that the State's comments also violated his "due process" rights.  We will not reach this issue as "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."  Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

adopts a view that no reasonable person would take or that is based on untenable grounds or reasons." State v. Boyle, 183 Wn. App. 1, 12-13, 335 P.3d 954 (2014).

The State moved the court to admit K.D.'s recorded statements to a detective in January 2019 under ER 803(a)(5). Shakir's counsel expressed concerns about K.D.'s memory, citing the four-prong test above. On the court's instruction to the State to lay further foundation, K.D. then testified she remembered giving the statements at issue to the detective, that she was telling the truth in that statement, and that her memory was clearer back then. K.D. further testified on the evolution of her memory since giving this statement to detectives. In short, she explained that the trauma of this incident and the passing of three family members negatively affected her memory. With this, the court held it was "satisfied with the foundation" and allowed the admission of the recording.

Based on the totality of K.D.'s testimony, we hold the court did not abuse its discretion in finding the State established the recording conveys information K.D. "once had knowledge" about and "was made" and later adopted by K.D. when the subject matter was "fresh in [her] memory." Alvarado, 89 Wn. App. at 548. The testimony above provided tenable grounds on which the court based its decision. State v. Haq, 166 Wn. App. 221, 261-62, 268 P.3d 997 (2012).

In response, Shakir argues that there are numerous inconsistencies between the recorded recollection and other evidence.[7] Even assuming Shakir

---

[7] For example, as Shakir argues in his brief, K.D. "stated that she walked to the Uber or Lyft alone, but in fact her friend Fernando Garcia walked her to the car and helped her get in"; K.D. "told the detective that she only got into one car, but surveillance video shows she got out of the first car while the driver was dropping off another passenger at the W Hotel, leaned against a wall for several minutes,

accurately identifies inconsistencies between the statements in the recorded recollection and other evidence, his argument conflates the credibility of a given statement with its admissibility. We have held that there is a "distinction between the accuracy of the recorded recollection itself and the credibility of the witness's statement." In re Det. of Peterson, 197 Wn. App. 722, 728, 389 P.3d 780 (2017). "[A] record can be considered accurate for the purposes under ER 803(a)(5) even when a witness's credibility is clearly questionable." Id. at 729. Credibility issues from "inconsistencies in evidence are matters which affect weight and credibility and are within the exclusive province of the jury." Herriman v. May, 142 Wn. App. 226, 232, 174 P.3d 156 (2007); In re Det. of R.W., 98 Wn. App. 140, 144, 988 P.2d 1034 (1999) ("the jury is the sole judge of the weight of the testimony"). In contrast, the preliminary question of "admissibility of evidence shall be determined by the court." ER 104(a). Shakir's remedy was to highlight these purported inconsistencies within cross-examination or at closing argument. See Peterson, 197 Wn. App. at 728-29.

This court's decision in State v. White, 152 Wn. App. 173, 215 P.3d 251 (2009), is instructive. There, the witness "could not remember if the statement accurately reflected what she told the police, because she was 'too intoxicated.'" Id. at 185. However, the witness, "even after reading the statement on the stand, did not disavow the accuracy of the statement." Id. Further, we held that the witness "[o]n the 911 tape, identifies [the defendant] as the attacker" and "testified

---

then got in another car."; and K.D. "also told the detective that she sat in the front because the driver told her to, but surveillance video shows she got in the back of both cars.

11

that it is her voice on the tape." Id. at 186. As such, this court held "the totality of the circumstances support the trial court's ruling" and "the trial court did not abuse its discretion in admitting [the witness'] statement" as an ER 803(a)(5) recorded recollection. Id. This court so held, despite the fact the witness "did not testify that the statement accurately reflected her prior knowledge." Id. at 184.

Here, while she acknowledged her memory was "hazy" due to her consumption of alcohol, K.D., not only did not disavow the accuracy of the statement, but affirmatively testified that she recalled giving the statement in the recording. And, unlike the witness in White, K.D. expressly testified the recording accurately reflected her knowledge at the time.

From the above, we hold the court did not abuse its discretion in allowing K.D.'s statements to be admitted as a recorded recollection under ER 803(a)(5). Shakir did not show that the court's decision "adopts a view that no reasonable person would take." Boyle, 183 Wn. App. at 12-13.[8]

C.     Double Jeopardy

Shakir next argues his convictions for kidnapping in the first degree and indecent liberties violate double jeopardy. We disagree.

---

[8] Shakir further argues the court erroneously "conflated knowledge with truth-telling, and repeatedly indicated it thought that the statement could only be excluded if K.D. lied." This argument is contrary to the record as the court demonstrated it was cognizant of the difference between admissibility and credibility. For example, the court explained Shakir's concerns on credibility were "a matter for argument in cross-examination. That's not a matter for – for foundation." The court also accurately cited to authority which "says even if the declarant later claimed a statement was not true that that would be – it would be susceptible to admissibility." (Citing State v. Nava, 177 Wn. App. 272, 294-95, 311 P.3d 83 (2013)).

12

"The constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense." State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991); see also U.S. CONST. amend. V; CONST. art. I, § 9. "'If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended.'" State v. Arndt, 194 Wn.2d 784, 815-16, 453 P.3d 696 (2019) (quoting State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005)).

To "determine legislative intent regarding whether cumulative punishment is authorized,"

> [w]e follow four analytical steps . . . :  (1) consideration of any express or implicit legislative intent, (2) application of the Blockburger, or 'same evidence,' test, (3) application of the 'merger doctrine,' and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

Id. at 816 (citing Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).  Double jeopardy "does not prohibit the imposition of multiple punishments if legislative intent can be found in one of the four double jeopardy analytical steps" articulated above.  Id. at 818.  Claims of double jeopardy are reviewed de novo.  Id. at 815.  The party asserting a double jeopardy claim bears the burden of showing a double jeopardy violation, here Shakir.  State v. Moses, 104 Wn. App. 153, 158 n.16, 15 P.3d 1058 (2001).

Shakir only addresses the second analytic step.  Under Blockburger's same evidence test, we gauge whether "the same act or transaction constitutes a violation of two distinct statutory provisions" by asking "whether each provision requires proof of a fact which the other does not."  284 U.S. at 304.  Stated otherwise, "[i]f each offense requires proof of an element not required in the other,

where proof of one does not necessarily prove the other, the offenses are not the same and multiple convictions are permitted." State v. Louis, 155 Wn.2d 563, 569, 120 P.3d 936 (2005). Thus, we now consider whether indecent liberties and kidnapping in the first degree are the same in law and in fact. State v. Tili, 139 Wn.2d 107, 125, 985 P.2d 365 (1999).

For double jeopardy claims, "[w]e consider the elements of the crimes as charged and proved, not merely as the level of an abstract articulation of the elements." Freeman, 153 Wn.2d at 777.

Kidnapping in the first degree requires the defendant "intentionally *abducts* another person with intent . . . [t]o facilitate commission of any felony," here indecent liberties. RCW 9A.40.020(1)(b) (emphasis added). "'Abduct' means to *restrain* a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1) (emphasis added). "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." Id. at (6). In contrast, indecent liberties requires the defendant "knowingly causes another person to have *sexual contact* with him or her or another . . . [b]y forcible compulsion." RCW 9A.44.100(1)(a) (emphasis added). "'Sexual contact,'" by definition, requires physical "touching." RCW 9A.44.010(13).

Here, the charging documents and jury instructions align with the statutory definitions below. As the State charged then, indecent liberties required it to show that Shakir made physical "sexual contact" with the victim(s) while its kidnapping

14

charges do not. The kidnapping in the first degree charge could have been accomplished by only "intimidation" and thus without any physical contact. Further, as both charged and under the statute, kidnapping in the first degree requires only "intent" to facilitate another felony and does not require the defendant actually succeed in committing said felony. RCW 9A.40.020(1)(b). Thus, the kidnapping in the first degree charge did not incorporate the "sexual contact" element of indecent liberties. In other words, as charged, kidnapping in the first degree and indecent liberties each "includes an element not included in the other" and are, thus, legally distinct. Louis, 155 Wn.2d at 569.

The factual distinction between Shakir's charges for kidnapping in the first degree and indecent liberties is also reflected in the facts "proven" at trial. Freeman, 153 Wn.2d at 777. For example, K.P. testified she tried to leave Shakir's vehicle, but the doors were locked. She also testified that Shakir told her "'[y]ou want this'" and took her to a "dark abandoned parking lot." As further example, K.D. testified Shakir "handcuffed" her to a "bar in the front seat," and had taken her to a dark, wooded area that she did not recognize.

Based on this testimony, the jury could have found that the State established kidnapping in the first degree as Shakir restrained K.P. and K.D. by secreting or holding them in a place where they were not likely to be found. RCW 9A.40.010(1)(a). However, this testimony alone was not sufficient to establish indecent liberties, which again, requires the defendant make "sexual contact" with another person. RCW 9A.44.100(1). Thus, as charged and on the facts proven, the charges of kidnapping in the first degree and indecent liberties require different

15

evidence be proven. See, also, State v. Nysta 168 Wn. App. 30, 49, 275 P.3d 1162 (2012) (distinguishing between the evidence *required* to convict versus the evidence *available* to convict).

In sum, we hold Shakir's convictions for kidnapping in the first degree and indecent liberties are legally and factually distinct under Blockburger. 284 U.S. at 304. Thus, we reject Shakir's double jeopardy claim under Arndt, 194 Wn.2d at 818, based only on this factor.

D.     Legal Financial Obligations

Shakir's judgment and sentence imposed both a VPA and DNA collection fee. Shakir now requests a remand to strike both legal financial obligations. The State states it "does not oppose a remand for the limited purpose of striking the VPA and DNA fee without a hearing." We accept this concession and remand this case to the trial court to strike the DNA collection fee[9] and VPA[10] in accordance with RCW 43.43.7541(2) and RCW 7.68.035(4).[11]

---

[9] The legislature amended statutes governing DNA collection fees, eliminating the fee for all defendants. LAWS OF 2023, ch. 449, § 4. Further, courts are required to waive any DNA collection fee imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 43.43.7541(2).

[10] Formerly, RCW 7.68.035(1)(a) mandated a $500 victim penalty assessment for all adults found guilty in superior court of a crime. State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016). In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are required to waive VPAs imposed prior to the 2023 amendments, on the offender's motion. Id.; RCW 7.68.035(5)(b).

[11] Shakir also claims the "offender score and sentence length are improper because counts one and two constituted the same criminal conduct and counts four and five constituted the same criminal conduct" and asserts his counsel was ineffective for not raising this claim at sentencing. As the claims have no accompanying substantive argument, we will not consider these two assignments

16

E.      Statements of Additional Grounds

Statements of additional grounds ensure an appellant can raise issues in their criminal appeal that may have been overlooked by their attorney.  RAP 10.10(a).  Recognizing the practical limitations many incarcerated individuals, RAP 10.10(c) does not require that the statement contain citation to the record or authorities.  But the appellant must still "inform the court of the nature and occurrence of alleged errors."  RAP 10.10(c).  Further, courts are not obliged to search the record for support of the appellant's claims.  Id.

In June 2023, Shakir filed a four page handwritten document titled "RAP 10.10 (SAG) Reserve to Supplement" (SAG I).[12]  In July 2024, Shakir also filed a typed 20 page statement of additional grounds (SAG II).

1. Prosecutorial Misconduct

_____

of error.  State v. Sims, 171 Wn.2d 436, 441, 256 P.3d 285 (2011)

[12] Within SAG I, Shakir presents two overarching arguments.  We reject both.

First, Shakir argues the superior court acted outside its jurisdiction by failing to order post-conviction discovery or an evidentiary hearing.  Further, he alleges his appellate counsel failed to find additional evidence.  In so arguing, Shakir fails to provide any specific citation to the record or specifically describe what this additional evidence is.  Regardless, we do not reach claims that rely on evidence outside the record.  See State v. McFarland, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995) (if an appellant "wishes a reviewing court to consider matters outside the record, a personal restraint petition is the appropriate vehicle").

Second, Shakir argues RCW 9A.44.020(1), which states an alleged victim's testimony need not be corroborated, violates the equal protection and due process protections of the United States Constitution as well as his "'[r]ight to remain silent.'"  We need not consider these high level assertions as Shakir fails to cite any binding authority.  Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wn.2d 1, 14, 721 P.2d 1 (1986) ("'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" (alterations in original) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970))).

Shakir in SAG II claims the State committed prosecutorial misconduct three times in its closing argument.

Again, prosecutorial misconduct requires the appellant establish both impropriety and prejudice. Emery, 174 Wn.2d at 756. As Shakir acknowledges, his counsel did not object to the alleged misconduct and thus he must show that the actions, even if improper, were "flagrant and ill-intentioned." Emery, 174 Wn.2d at 760-61. We need not reach that heightened standard of prejudice because Shakir does not establish any of these statements below were improper.

a. Vouching

Shakir alleges the State "repeatedly vouched for the 'credibility' of its witnesses and that they were telling the 'truth.'" It "is improper for a prosecutor to vouch for the credibility of a witness." State v. Warren, 134 Wn. App. 44, 68, 138 P.3d 1081 (2006). "However, an argument does not constitute vouching unless it is clear that the prosecutor is not arguing an inference from the evidence, but instead is expressing a *personal opinion* as to the witness's credibility." Id. (emphasis added). The State "may freely comment on the credibility of the witnesses *based on the evidence*." Id. (emphasis added).

Similar to the facts of Warren, the State's comments here specifically discussed the trial testimony or evidence. Cf. Warren, 134 Wn. App. at 68 ("the prosecutor argued that [the witness]'s testimony was credible *based on specific details she testified to at trial*" and thus "[b]ecause the prosecutor's argument was based on the evidence presented at trial, it was not misconduct.") (emphasis added). Thus, we hold the State's challenged comments were not improper

18

vouching.[13]

      b. Evidence Outside the Record

Shakir next argues the State improperly created a "false narrative about what Mr. Shakir was supposedly thinking during the attack on [K.P.]." Among other comments, Shakir cites to the State's claim in closing argument that Shakir "[knew] what to expect when he [took] K.P." to an isolated "closed business" and that he "knew that she did not need to be in this Kirkland location. He knew that she needs to be going to Everett, and he took her here instead."

In support, Shakir relies on State v. Pierce, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012). There, this court held that "a prosecutor commits reversible misconduct by urging the jury to decide a case based on evidence outside the record" and there the State "attribut[ed] repugnant and amoral thoughts to him— thoughts that were based on the *prosecutor's speculation and not evidence*." Id. at 553-54 (emphasis added).

In contrast to Pierce, the State here based its discussion on evidence from the record. For example, Shakir's quote omits the beginning of the State's argument referring to how "he works at that AT&T right on the other side of the road. So he knows this area." Shakir does not dispute he worked at that AT&T or the fact he admitted as much to detectives. Further, K.P. testified that she had indicated she wished to be dropped off at a different location, specifically an address in Everett. The State reasonably drew the inference that Shakir both knew

---

[13] Shakir also asserts his counsel's performance was deficient by not objecting to the State's conduct discussed above. Because we hold the State's conduct was not improper, this claim also fails.

the area where the incident occurred and that K.P. did not intend to be transported there. Thus, we hold the State's comments not speculative or based on evidence outside the record.

    c. Remaining Comments

Shakir alleges the State committed misconduct when it argued that he had "'got[ten] away' with his crimes 'for awhile [*sic*] until today.'" Shakir implies this statement improperly carries a personal opinion of guilt. Indeed, "many cases warn of the need for a prosecutor to avoid expressing a personal opinion of guilt." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 706-07, 286 P.3d 673 (2012).

However, the authorities summarily cited by Shakir are factually distinguishable. State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014) (where the State argued it was the jury's duty to "'speak the truth'" rather than to assess if the State had proven the defendant guilty beyond a reasonable doubt); Monday, 171 Wn.2d at 677 (where the State argued "good prosecutors believe 'the word of a criminal defendant is inherently unreliable'"); State v. Hecht, 179 Wn. App. 497, 506, 319 P.3d 836 (2014) (where the State superimposed the word "'GUILTY'" in red capital letters over defendant's photo); Glasmann, 175 Wn.2d at 708 (same).

Finally, Shakir avers that the State improperly "asked the jury to hold Mr. Shakir 'accountable for the things that he did'" to the four victims. In so arguing, Shakir cites to no on-point published Washington authority. Instead, Shakir cites a case from New Jersey, State v. Neal, 361 N.J. Super. 522, 826 A.2d 723, 734 (App. Div. 2003), and a case from Maine, State v. Begin, 2015 ME 86, 120 A.3d

97, 103. Id. at 6.

This court recently rejected a similar invocation of Neal in State v. Bianchi, simply holding Neal was "not controlling in Washington." No. 83338-3-I, slip op. at 23 fn.8 (Wash. Ct. App. Apr. 4, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/833383.pdf.[14] Likewise, we are unpersuaded by Shakir's reliance on out-of-state authorities.

We hold Shakir failed to establish the impropriety of the State's above conduct and thus we need not consider prejudice. Emery, 174 Wn.2d at 760.

2. Ineffective Assistance of Counsel

Shakir next alleges he received ineffective assistance of counsel because his attorney failed to present a CrR 7.4 motion, which permits a judgment to be arrested for inter alia "insufficiency of the proof of a material element of the crime." Shakir lists numerous purported inconsistencies within trial evidence and the lack of DNA evidence. From this, he argues there was a "reasonable doubt of the successful 'sexual contact' element of indecent liberties."

We examine this claim under the test from Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Sardinia, 42 Wn. App. 533, 540, 713 P.2d 122 (1986).

"In order to prove ineffective assistance of counsel, a defendant must show that the attorney's performance was deficient and that prejudice resulted." State v. Levy, 156 Wn.2d 709, 729, 132 P.3d 1076 (2006). To establish deficient

---

[14] We cite these unpublished authorities as it is "necessary for a reasoned decision" as it directly addresses an out-of-state case invoked by the appellant. GR 14.1(c).

21

performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Our analysis "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

In arguing deficient performance, Shakir cites to State v. Lopez, 107 Wn. App. 270, 276-77, 27 P.3d 237 (2001), where the defendant was charged with unlawful firearm possession. There, "the State presented *no* evidence showing Mr. Lopez had been convicted of a serious offense prior to the alleged assault" and the "sole evidence of a previous conviction was Mr. Lopez's *fleeting* admission during his direct testimony in the defense phase of the trial." Lopez, 107 Wn. App. at 276 (emphasis added). Thus, this court held that, "[b]ecause the State had neglected to prove an essential element of unlawful firearm possession, the trial court would have necessarily granted the [CrR 7.4] motion" and, thus, there was "no sound strategic or tactical reason" for "counsel's failure to move for dismissal." Id. at 277.

Shakir's matter is distinguishable from Lopez. As evidenced by Shakir's own lengthy discussion of trial testimony, the jury heard more than a mere "fleeting" amount of evidence as to "sexual contact" element of indecent liberties. Lopez 107 Wn. App. at 276; RCW 9A.44.100(1). Further, Shakir's own discussion of DNA evidence fails to cite any Washington authority indicating a lack of DNA evidence creates reasonable doubt for indecent liberties, let alone negate any other evidence on the issue.

As Shakir failed to establish deficient performance for the above two claims,

22

his claim fails and we need not consider prejudice.  <u>Levy</u>, 156 Wn.2d at 729.[15]

III.    <u>CONCLUSION</u>

We remand with instructions to strike Shakir's VPA and DNA collection fee.

Otherwise, we affirm.

_____
Díaz, J.

WE CONCUR:

_____        _____
Birk, J.                                Bremmer, J

---

[15] SAG II also seeks reversal under the cumulative error doctrine.  As we hold there is no error, this claim fails as well.